STATE OF NORTH CAROLINA v. DANIEL CORNELIUS MURPHY

No. 325A87

(Filed 9 March 1988)

**1. Jury § 6— prospective jurors—refusal to sequester—comments about death penalty**

 The trial court did not abuse its discretion by refusing to sequester prospective jurors in a first degree murder case because of comments by two prospective jurors concerning the Biblical basis for the death penalty and a comment by a third prospective juror that a life sentence "does not mean that they will be in there for life and they are capable of committing this crime again" where defense counsel's question elicited the remark by the third prospective juror; all three of these prospective jurors were excused and never sat on the case; and defendant did not receive the death penalty but received a life sentence. N.C.G.S. § 15A-1214(j).

**2. Homicide § 20.1— photographs and videotape of victim's body—denial of motion to limit**

 The trial court did not err in denying defendant's motion to limit the State's photographic evidence of a homicide victim's body where this evidence included four photographs depicting all or part of the victim's body and a videotape of the crime scene which included the body; the photographs and

videotape were used to illustrate testimony as to the location and condition of the victim's body; and each photograph showed something different, none was especially inflammatory, and the total amount of photographic evidence was not excessive.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a life sentence imposed by *Griffin, J.*, at the 16 February 1987 Criminal Session of Superior Court, NEW HANOVER County. This Court allowed defendant's motion to bypass the Court of Appeals as to sentences of less than life. Heard in the Supreme Court 8 February 1988.

Defendant was tried for first degree murder, felonious larceny of an automobile, breaking or entering, and larceny of a blank check and car keys. Evidence at trial tended to show that defendant had done yard work and other odd jobs for the 69-year-old victim, Mrs. Davis. On 7 September 1986 he called her at night and asked her to come to his house so he could pay her some money. She refused. The next day someone called and told her to claim a package at the police station. She called the police and told them she believed defendant had made both of these calls.

Over a five hour period on the evening of 10 September, a friend of Mrs. Davis, and later Mrs. Davis' daughter, both called Mrs. Davis and received no answer. The friend went to Mrs. Davis' house, saw her car missing, and entered the unlocked front door. She found Mrs. Davis' body lying face down in a pool of blood. A windowpane in the back door had been broken, with the broken glass found inside the house. A bloody handprint was on the bedroom door. A box of checks beginning with #1480 was found on a bureau in the bedroom.

A pathologist found four wounds on her body, including a blow to the head which fractured her skull and tore her brain.

The next morning Mrs. Davis' car was found on a nearby dirt road. Shoe impressions had been made in the dirt. There was a crumpled check stub numbered 1478 in the front seat. Defendant cashed Mrs. Davis' check #1478 at 3:50 that day. It was made out for $475, not in Mrs. Davis' writing.

Police Captain William F. Henry found defendant at his grandfather's house. Defendant voluntarily went with him to the

police station. Defendant was read his rights, waived them, and allowed the police to take his fingerprints and search his wallet. They found Mrs. Davis' check #1479. It was blank. They arrested him. He confessed to the killing, and allowed his confession to be videotaped. His fingerprints matched those in Mrs. Davis' house and car. His shoes matched the prints near the car.

Defendant was found guilty as charged. He received a separate sentencing hearing for the murder. When the jury could not agree on a recommendation, defendant was sentenced to life imprisonment. He received consecutive sentences of ten years for each of the other crimes.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*Arnold Smith for defendant appellant.*

WEBB, Justice.

[1] In his first assignment of error, defendant contends the trial court erred in denying his motion to sequester the prospective jurors during the selection of the jury. Defendant argues that the denial of this motion prejudiced him because of certain remarks by prospective jurors, to wit, by prospective juror number four who said, "but I believe [the death penalty] has some basis both in historical fact and in the Bible references"; by prospective juror number ten who said, "I agree exactly with what he said, again, the Biblical reference"; and by prospective juror number seven who said, "If someone has been convicted of First Degree Murder and found guilty, a life imprisonment sentence does not mean that they will be in there for life and they are capable of committing this crime again."

N.C.G.S. § 15A-1214(j) provides: "In capital cases the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State. These jurors may be sequestered before and after selection." This statute gives neither party an absolute right to such a procedure. "The decision of whether to grant sequestration and individual *voir dire* of prospective jurors rests in the sound discretion of the trial court, and its ruling will not be disturbed absent a showing of an abuse of discretion." *State v. Barts,* 316

N.C. 666, 678-9, 343 S.E. 2d 828, 837 (1986). Defendant has not shown, nor can we find, any abuse of discretion by the trial court in the present case. It was defense counsel's question that elicited the remark by prospective juror number seven about life imprisonment. This prospective juror and prospective jurors four and ten were excused and never sat on the case. Furthermore, since defendant did receive a life sentence, these remarks could not have been prejudicial to him. Defendant's assignment of error has no merit.

[2] Defendant next contends the trial court erred in denying his motion to limit the State's photographic evidence of the victim's body. This evidence included four photographs depicting all or part of the victim's body, and a videotape of the crime scene which included the body. Defendant argues that "the magnitude of the photographic evidence" depicting the victim's body tended to "repulse the sensibilities and to arouse the sympathy and passion of the jury."

Properly authenticated photographs of a homicide victim may be introduced into evidence even if they are gory, gruesome, horrible or revolting, so long as they are used by a witness to illustrate his testimony and so long as an excessive number of photographs are not used solely to arouse the passions of the jury. *State v. Holden,* 321 N.C. 125, 362 S.E. 2d 513 (1987); *State v. King,* 299 N.C. 707, 264 S.E. 2d 40 (1980). In the present case, the photographs and the videotape were used to illustrate testimony as to the location and condition of the victim's body. Each photograph showed something different, none was especially inflammatory, and the total amount of photographic evidence was not excessive. Furthermore, in light of the overwhelming evidence of defendant's guilt, and in light of his receiving a sentence of life imprisonment, the minimum sentence for first degree murder, we cannot find that the admission of this photographic evidence prejudiced defendant. This assignment of error is overruled.

No error.