STATE OF NORTH CAROLINA v. CURTIS EUGENE WILDS

No. COA98-797

(Filed 18 May 1999)

**1. Sentencing— capital—aggravating circumstances—pretrial hearing denied**

The trial court did not abuse its discretion in a capital first-degree murder prosecution which resulted in a life sentence by denying defendant's request for a pretrial hearing to determine whether the evidence was sufficient for the case to proceed capitally. It is clearly within the broad discretion of the trial court to hold a pretrial hearing and the court did not abuse its discretion here; moreover, the jury found that the mitigating circumstances outweighed the aggravating circumstances and recommended a life sentence, so that defendant failed to show that he was prejudiced.

**2. Homicide— first-degree murder—premeditation and deliberation—sufficiency of evidence**

There was sufficient evidence of premeditation and deliberation in a first-degree murder prosecution.

**3. Sentencing— capital—aggravating circumstances—especially heinous, atrocious, or cruel**

There was no error and no prejudice in a capital prosecution for a first-degree murder in the submission of the especially heinous, atrocious, or cruel aggravating circumstance because the evidence of multiple stabbings of the victim in the presence of her children was sufficient to support this circumstance and the jury found that the mitigating circumstances outweighed the aggravating circumstances and recommended life imprisonment.

**4. Evidence— prior crime or act—assault on victim—admissible**

The trial court did not err in a prosecution for first-degree murder by admitting evidence of defendant's prior convictions, including assaulting the victim. Evidence of a defendant's prior assaults on the victim for whose murder the defendant is being tried is admissible for the purpose of showing malice, premeditation, deliberation, intent or ill will against the victim. The ten-year time span between the conviction and the victim's death affected the weight rather than the admissibility.

**5. Evidence— hearsay—state of mind exception—incidents of abuse against victim—factual events**

    The trial court did not err in a first-degree murder prosecution by admitting hearsay statements of the victim where her state of mind during each of the conversations was relevant because they related to her relationship with defendant preceding her death and rebutted defendant's self-defense inferences. Statements relating factual events which tend to show the victim's state of mind, emotion, sensation, or physical condition when the victim made the statements are not excluded if the facts related by the victim serve to demonstrate the basis for the victim's state of mind, emotions, sensations, or physical conditions. Moreover, the State offered substantial independent testimony that defendant acted with malice, premeditation, and deliberation.

**6. Evidence— photograph of defendant—shackles and blood**

    There was no plain error in a first-degree murder prosecution where the court allowed the State to publish to the jury a photograph of defendant taken on the morning of the killing in which his legs were in shackles and there was blood on his hands and clothes and small knife wounds on his hands. The State offered overwhelming evidence of malice, premeditation, and deliberation and the jury would not have reached a different verdict if the photograph had been excluded.

**7. Evidence— homicide—photographs of victim's body**

    The trial court did not abuse its discretion in a first-degree murder prosecution by allowing the State to publish to the jury photographs of the victim's wounds at the crime scene and autopsy photographs taken at the same angles and showing the same wounds where the autopsy photos revealed wounds that could not be seen in the crime scene photos because of the blood covering the body. The photographs were neither cumulative nor excessive in number and their probative value was not substantially outweighed by the danger of unfair prejudice.

**8. Evidence— homicide—911 tape from victim's daughter— not unduly prejudicial**

    The trial court did not abuse its discretion in a first-degree murder prosecution by admitting a tape of the 911 conversation between the victim's eight-year-old daughter and the Sheriff's Office. Although defendant argued that the prejudicial effect of

the tape outweighed its probative value, the tape had probative value in corroborating the testimony of the daughter and defendant did not show that admitting the tape was not the result of a reasoned choice.

**9. Witnesses— motion to sequester witnesses—denied**

The trial court did not abuse its discretion in a first-degree murder prosecution by denying defendant's motion to sequester witnesses. Defendant did not show that the court's ruling was so arbitrary that it could not have been the result of a reasoned decision.

Judge EDMUNDS concurring.

Appeal by defendant from judgment entered 10 November 1997 by Judge Howard R. Greeson, Jr. in Davidson County Superior Court. Heard in the Court of Appeals 29 March 1999.

Defendant appeals his first-degree murder conviction. Evidence presented at defendant's trial tended to show the following:

On the morning of 14 November 1996, defendant Curtis Eugene Wilds was sitting at a table in the kitchen of his home. His wife Tonya Wilds and their three minor children, ages six, eight, and nine, were also in the kitchen and Tonya was ironing clothes. Tonya told the children that the police would want to ask them questions at school that day because defendant had told the police that Tonya had abused the children. As Tonya was talking to the children, defendant got up from the table, picked up a knife, walked over to Tonya, and threw her on the floor. A struggle ensued and continued into the living room, where defendant stabbed Tonya repeatedly in the neck and body, leaving over a dozen wounds in her body. The children tried to pull defendant away from Tonya. The middle child, China Wilds, called 911 and told emergency dispatchers that "Curtis Wilds [was] trying to kill Tonya Wilds." After defendant stabbed Tonya, he dropped the knife and walked out the back door of the house. Defendant testified that when he saw a police car turning into his driveway, he walked back to the house and told the police officers, "I'm the one who did it." Tonya died as a result of the numerous stab wounds.

On 13 January 1997, defendant was charged with first-degree murder. On 20 February 1997, the trial court determined that probable cause existed to believe an aggravating factor existed, i.e., that the killing was "especially heinous, atrocious, or cruel," and declared

the case a capital murder case. On 3 September 1997, defendant filed a motion for a pre-trial hearing to determine whether there was sufficient evidence to support the submission to the jury of an aggravating circumstance. The trial court denied defendant's motion. On 27 October 1997, defendant was capitally tried on the charge of first-degree murder. The jury returned a verdict of guilty. At the sentencing hearing, the jury found that the mitigating circumstances outweighed the aggravating circumstances and recommended a life sentence. On 10 November 1997, the judge sentenced defendant to life imprisonment.

> *Attorney General Michael F. Easley, by Assistant Attorney General Dennis P. Myers, for the State.*

> *White & Crumpler, by David B. Freedman, Dudley A. Witt, and Laurie A. Schlossberg, and Causey & Nixon, L.L.P., by William G. Causey, Jr. and Alec Carpenter, for defendant-appellant.*

EAGLES, Chief Judge.

[1] We first determine whether the trial court abused its discretion when it denied defendant's request for a pre-trial, so-called *Watson* hearing to determine whether the evidence was sufficient for the case to proceed to trial as a capital case. *See State v. Watson*, 310 N.C. 384, 312 S.E.2d 448 (1984). The trial court refused to hold a pre-trial hearing on the basis that "premature evidence might come out during the case itself to support an aggravating factor that was not brought out at the *Watson* hearing." Defendant contends that the trial court abused its discretion by failing to offer a "sustainable reason for denying the defendant's motion." Defendant further contends that the trial court's failure to conduct a *Watson* hearing resulted in a trial of defendant before a death-qualified jury in violation of his constitutional right to be tried by a fair and impartial jury.

Defendant's argument fails. Defendant bases his argument for a pre-trial hearing on *State v. Watson*, 310 N.C. 384, 312 S.E.2d 448 (1984). In *Watson*, the trial court held a pre-trial hearing to determine whether there was sufficient evidence to support the submission of an aggravating factor to the jury. *Id.* at 388, 312 S.E.2d at 452. The *Watson* Court "commend[ed]" the procedure for "its judicial economy and administrative efficiency." *Id.* However, it is clearly within the broad discretion of the trial court to hold a pre-trial hearing, and the trial court did not abuse its discretion here. Furthermore, our courts have uniformly rejected the argument that "death-qualifying" a jury

deprives a defendant of his constitutional right to a free trial. *See, e.g., State v. Young,* 312 N.C. 669, 686, 325 S.E.2d 181, 191 (1985). Finally, we note that, although the trial was held before a "death-qualified" jury, the jury found that mitigating circumstances outweighed the aggravating circumstances and recommended a life sentence rather than death. Accordingly, defendant has failed to show that he was prejudiced in any way by the trial court's refusal to hold a *Watson* hearing. Defendant's assignment of error is overruled.

**[2]** Defendant next contends that the evidence was insufficient to support a first-degree murder conviction. Defendant contends that "other than unreliable and inadmissible hearsay, no evidence was presented to indicate that the defendant had at any time formed the specific intent to kill his wife or that he did so in a cool state of mind in furtherance of any plan or design. The defendant's evidence . . . tended to show that the victim initiated the violent conduct . . . by being the first to pick up a knife." We disagree. "First-degree murder is the unlawful killing of a human being with malice, premeditation and deliberation." *State v. Misenheimer,* 304 N.C. 108, 113, 282 S.E.2d 791, 795 (1981). "Malice," which can be express or implied, is not necessarily "hatred or ill will," but rather "is an intentional taking of the life of another without just cause, excuse or justification." *State v. Robbins,* 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). "Premeditation" occurs when the defendant forms the specific intent to kill some period of time, however short, before the actual killing. *State v. Weathers,* 339 N.C. 441, 451, 451 S.E.2d 266, 271 (1994). "Deliberation" is when the intent to kill is formed while the defendant is in a cool state of blood rather than under the influence of a violent passion suddenly aroused by sufficient provocation. *Id.* at 451, 451 S.E.2d at 271-72.

> In order for the trial court to submit a charge of first degree murder to the jury, there must have been substantial evidence presented from which a jury could determine that the defendant intentionally [] killed the victim with malice, premeditation and deliberation. "Substantial evidence" is that amount of relevant evidence that a reasonable mind might accept as sufficient to support a conclusion. In ruling upon defendant's motion to dismiss on the grounds of insufficient evidence, the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor.

*State v. Corn,* 303 N.C. 293, 296-97, 278 S.E.2d 221, 223 (1981) (citations omitted). Because premeditation and deliberation ordinarily are

not susceptible of proof by direct evidence, the State generally must establish them by circumstantial evidence. *Weathers*, 339 N.C. at 451, 451 S.E.2d at 271. Examples of circumstances that may raise an inference of premeditation and deliberation include (1) "conduct and statements of the defendant before and after the killing," (2) "threats made against the victim by the defendant, ill will or previous difficulty between the parties," and (3) "evidence that the killing was done in a brutal manner." *State v. Bullard*, 312 N.C. 129, 161, 322 S.E.2d 370, 388 (1984).

Here, the State presented testimony by defendant's daughter China Wilds that on the morning of the killing defendant seemed "pretty angry" and "got up and went over there and got the knife while [Tonya] was looking down ironing her clothes and that was when he put [the knife] behind his back." China further testified that defendant then "put [the knife] around [Tonya's] neck and then pushed her down on the floor." China testified that the struggle moved to the living room, where [defendant] "was over there stabbing her." China further testified that Tonya did not pick up a knife or otherwise attack defendant before he began stabbing her. Furthermore, the State also introduced into evidence the 911 call that China Wilds made, in which she told dispatchers that "Curtis Wilds is trying to kill Tonya Wilds."

At trial, forensic pathologist John D. Butts, M.D., testified that when he performed an autopsy on Tonya's body, he found "a number of stab cutting injuries present on her body" that were "centered mostly around the face and neck region, [and] she had cuts on her hands, both hands, as well as a few minor cuts and scratches on her right upper arm." Dr. Butts described the wounds on Tonya's hands as "defensive wounds."

The State also introduced testimony by witnesses stating that defendant had threatened to kill Tonya in the weeks before he killed her. Tonya's sister Candi Crawford testified that in the two weeks before Tonya's death, defendant told Candi twice that "[s]omebody has to die." Furthermore, Tonya's mother, Joan Crawford, testified that defendant told her the week before Tonya died that Tonya would end up like another woman who had been murdered by her spouse two months earlier.

After careful review of the record and viewing the evidence in the light most favorable to the State and allowing the State every reasonable inference, we conclude that the State offered substantial evidence from which the jury could determine that the defendant inten-

tionally killed Tonya with malice, premeditation, and deliberation. This assignment of error is overruled.

[3] Defendant next contends that the trial court erred when it submitted to the jury the aggravating factor that the killing was especially "heinous, atrocious, or cruel." Defendant contends that the killing did not rise to the level of "heinous, atrocious, or cruel." We conclude that the evidence was sufficient to support the trial court's finding that the multiple stabbings of Tonya, while in the presence of defendant's and Tonya's children, were especially "heinous, atrocious, or cruel." *See State v. Evans*, 120 N.C. App. 752, 463 S.E.2d 830 (1995), *cert. denied*, 343 N.C. 310, 471 S.E.2d 78 (1996). Even if the evidence had not been sufficient, defendant was not prejudiced by the submission because the jury answered that the mitigating circumstances outweighed the aggravating circumstances and recommended life imprisonment. *State v. Green*, 321 N.C. 594, 612, 365 S.E.2d 587, 598, *cert. denied*, 488 U.S. 900, 109 S. Ct. 247 (1988). This assignment of error is overruled.

[4] We next determine whether the trial court erred when it introduced evidence of defendant's 1986 conviction for assault on a female and injury to personal property pursuant to Rule 404(b) to show intent, ill will, and malice. At trial, a security officer from Community General Hospital testified that on 11 January 1986, he was summoned to one of the hospital's locker rooms, where defendant "had one hand around [Tonya's] throat and he was propped up with the other one against her." The security officer testified that after he persuaded defendant to turn Tonya loose, defendant then became angry and "he and I got into it after that" and "we knocked a few pictures off the wall . . . ." The security officer further testified that police officers arrived and arrested defendant. Defendant was convicted of assault on a female and injury to personal property. The trial court admitted the conviction under Rule 404(b) on the theory that "it goes to show intent, ill will, and malice" and stated that the "probative value outweighs prejudicial effect."

G.S. 8C-1, Rule 404(b) provides:

(b) Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

**STATE v. WILDS**

[133 N.C. App. 195 (1999)]

G.S. 8C-1, Rule 404(b) (1992). Rule 404(b) is "a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (emphasis in original). Evidence of a defendant's prior assaults on the victim for whose murder the defendant is being tried is admissible for the purpose of showing malice, premeditation, deliberation, intent or ill will against the victim under G.S. 8C-1, Rule 404(b). *State v. Gary*, 348 N.C. 510, 520, 501 S.E.2d 57, 64 (1998). Defendant argues nevertheless that the testimony regarding the assault conviction is too remote in time to be admissible under Rule 404(b). Remoteness for purposes of 404(b) must be considered in light of the specific facts of each case and the purposes for which the evidence is being offered. *State v. Hipps*, 348 N.C. 377, 405, 501 S.E.2d 625, 642 (1998), *cert. denied*, —— U.S. ——, 119 S. Ct. 1119 (1999). Remoteness in time may be significant when the evidence of the prior crime is introduced to show that both crimes arose out of a common scheme or plan. *State v. Stager*, 329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991). However, remoteness is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident. *Id.* at 307, 406 S.E.2d at 893. Moreover, remoteness in time generally goes to the weight of the evidence rather than to its admissibility. *Id.*

Here, the assault conviction arose out of an incident in which defendant went to the victim's workplace and physically abused her. We conclude that the conviction was admissible under Rule 404(b) to show "intent, ill will, and malice." Because the ten-year time span between the conviction and Tonya's death affected the weight rather than the admissibility of the evidence, we conclude that the trial court did not err in admitting the conviction. This assignment of error is overruled.

**[5]** In his next assignment of error, defendant contends that statements made by Tonya to several witnesses constituted inadmissible hearsay. Defendant contends that the witnesses' statements regarding the incidents of physical and emotional abuse were inadmissible hearsay under *State v. Hardy* because they were "mere recital[s] of facts" and should not have been admitted under the "state of mind" exception to the hearsay rule. *See State v. Hardy*, 339 N.C. 207, 451 S.E.2d 600 (1994). We first note that several statements that defend-

ant refers to in his brief are statements made on voir dire rather than in the presence of the jury. We address only those statements made in the presence of the jury.

## DAVIDSON COUNTY SHERIFF'S OFFICE EMPLOYEES WENDY PERRELL AND KELLY SMITH

At trial, Davidson County Sheriff's Office employees Wendy Perrell and Kelly Smith testified that the day before defendant killed Tonya, Tonya came into the Davidson County Sheriff's Office to inquire about accusations of child abuse that defendant made against her. Perrell and Smith testified that Tonya told them defendant had attempted to change Tonya's life insurance policy to designate himself as the named beneficiary. Perrell and Smith also testified that Tonya told them about an incident in which she woke up in her bed ·one night to discover that defendant was pouring gasoline on her nightgown. Smith testified that Tonya's "voice was shaking" when she spoke to them and that she was "tearful." Smith testified that Tonya told her that she had a "primarily unhappy" marriage "filled with physical and emotional abuse." Perrell testified that "[Tonya] did not tell me directly that she was scared of him or afraid of [defendant], but her mannerism and the way she conducted herself, I just assumed on my part." When asked on direct examination whether Tonya told Smith that she was afraid of defendant, Smith answered, "Yes, she did" and that "she was afraid he was going to try [to kill her] again."

## CANDI CRAWFORD

Tonya's sister, Candi Crawford, testified that about two or three weeks before defendant killed Tonya, Tonya called Crawford and asked her "to call Domestic Violence to see what she could do to get a restraining order against [defendant] to leave the house." Crawford testified that Tonya was too scared to call the office of Domestic Violence herself. Crawford testified that when she spoke to Tonya several weeks before Tonya's death, she could tell that Tonya was "upset" because of her "tears and then the trembling in her voice," and that during her conversations Tonya had stated that she was afraid of defendant. According to Crawford, Tonya told her that she often slept on the couch of her home with a knife underneath the cushion because she was afraid that "defendant would come out of the [bed]room one night and try to kill her one night while she was lying there."

## BEN ROBINSON

Tonya's close friend, Ben Robinson, Jr., testified that during the last two months of her life, Tonya had expressed her fear of defendant to Robinson and that she told Robinson about incidents of emotional and physical abuse. Robinson testified that Tonya had told him that defendant had threatened to kill her and that Tonya told him about the incident involving defendant putting gasoline on her nightgown.

## CHARO WASHINGTON

Tonya's sister, Charo Washington, testified that Tonya told Washington one week before she died that she was afraid defendant was going to kill her. Washington further testified that Tonya told her about the gasoline incident as well as a similar incident in which defendant poured lighter fluid or gasoline in a bathtub when Tonya was in it taking a bath. Washington further testified that Tonya had told her "about the time when she was on her knees begging for her life with a gun to her head, she said, 'I begged for my life from that man.' She was sick of it."

## JOAN CRAWFORD

Tonya's mother, Joan Crawford, testified that during the last four months of her life, Tonya would often come over to Crawford's house to sleep "because she was afraid to close her eyes around [defendant]." Crawford testified that Tonya was afraid that defendant "would kill her." Crawford also testified that Tonya had told her about past incidents of physical and emotional abuse during Tonya's marriage to defendant.

## G.S. 8C-1, Rule 803(3)

G.S. 8C-1, Rule 803(3) of the North Carolina Rules of Evidence allows hearsay testimony into evidence if it tends to show the victim's then existing state of mind or "emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ." G.S. 8C-1, Rule 803(3) (1992). Although statements that relate only factual events do not fall within the Rule 803(3) exception, *State v. Hardy*, 339 N.C. 207, 229, 451 S.E.2d 600, 612 (1994), statements relating factual events which tend to show the victim's state of mind, emotion, sensation, or physical condition when the victim made the statements are not excluded

if the facts related by the victim serve to demonstrate the basis for the victim's state of mind, emotions, sensations, or physical condition, *State v. Gray*, 347 N.C. 143, 173, 491 S.E.2d 538, 550 (1997), *cert. denied*, 523 U.S. 1031, 118 S. Ct. 1323 (1998). *See also State v. Marecek*, 130 N.C. App. 303, 306, 502 S.E.2d 634, 636, *review denied*, No. 362P98 (N.C. Supreme Court Dec. 30, 1998) ("[W]itness testimony that recounts 'mere recitation of fact' should be excluded, while testimony that includes both statements of fact and emotion may be admitted."). "The determination that fact-laden statements are not excluded from the coverage of Rule 803(3) where they tend to show the speaker's then-existing state of mind is further supported by the federal courts' interpretation of federal rule 803(3)." *State v. Exum*, 128 N.C. App. 647, 654, 497 S.E.2d 98, 103 (1998).

> In the first place, it is in the nature of things that statements shedding light on the speaker's state of mind usually allude to acts, events, or conditions in the world, in the sense of making some kind of direct or indirect claim about them. . . . In the second place, fact-laden statements are usually deliberate expressions of some state of mind. . . . [I]t does not take a rocket scientist . . . to understand that fact-laden statements are usually purposeful expressions of some state of mind, or to figure out that ordinary statements in ordinary settings usually carry ordinary meaning. In the end, most fact-laden statements intentionally convey something about state of mind, and if a statement conveys the mental state that the proponent seeks to prove, it fits the [federal rule 803(3)] exception.

*Id.* at 655, 497 S.E.2d at 103 (quoting 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 438, at 417-18 (2d ed. 1994) (explaining the federal courts' broad reading of federal rule 803(3)).

Here, the witnesses' testimony regarding Tonya's prior statements is admissible to show Tonya's state of mind, despite the fact that the statements also contained descriptions of factual events. This case is distinguishable from *Hardy* in that the statements in *Hardy* were taken from the victim's diary and contained descriptions of assaults and threats against the victim before she died but did not reveal the victim's state of mind or contain statements of the victim's fear of defendant. Tonya's explanatory comments about the prior incidents of physical and emotional abuse " 'were made contemporaneously with and in explanation of the victim's statements' and crying, thus showing her state of mind." *State v. Murillo*, 349 N.C. 573, 588, 509

S.E.2d 752, 761 (1998) (quoting *State v. Westbrooks*, 345 N.C. 43, 60, 478 S.E.2d 483, 493 (1996)). "The factual circumstances surrounding her statements of emotion serve only to demonstrate the basis for the emotions." *State v. Gray*, 347 N.C. 143, 173, 491 S.E.2d 538, 550 (1997), *cert. denied*, 513 U.S. 1031, 118 S. Ct. 1323 (1998). Accordingly, we conclude that the evidence was admissible under the state-of-mind exception of Rule 803(3). Furthermore, it was not necessary for Tonya to state explicitly to each witness that she was afraid, as long as the "scope of the conversation . . . related directly to [her] existing state of mind and emotional condition." *State v. Mixion*, 110 N.C. App. 138, 148, 429 S.E.2d 363, 368, *review denied*, 334 N.C. 437, 433 S.E.2d 183 (1993).

For admission under Rule 803(3), the state of mind testimony must also be relevant to the issues in the case. *State v. Bishop*, 346 N.C. 365, 379, 488 S.E.2d 769, 776 (1997). Here, Tonya's state of mind during each of the conversations at issue is relevant because it relates to her relationship with defendant preceding her death. Tonya's state of mind is relevant to rebut the defendant's self-defense inferences in his testimony that Tonya attacked defendant with a knife before defendant killed her. *State v. Faucette*, 326 N.C. 676, 683, 392 S.E.2d 71, 74 (1990). "The jury could infer from the evidence regarding [Tonya's] state of mind that it was unlikely that [she] would do anything to provoke defendant . . . ." *Id.* at 683, 392 S.E.2d at 74-75. Moreover, we conclude that the trial court did not abuse its discretion when it determined that the probative value of the witnesses' testimony was not outweighed by undue prejudice. Likewise, we conclude that the trial court did not err in admitting Tonya's statements to these witnesses pursuant to Rule 803(3).

Finally, we note that even if some of the statements did not fall under the "state-of-mind" exception, we conclude that the admission of the statements was not prejudicial error. Defendant confessed to killing Tonya. Independent of the testimony regarding Tonya's statements to witnesses before she died, the State offered substantial evidence, through the testimony of China Wilds, the autopsy pathologist, and emergency paramedics that defendant acted with malice, premeditation, and deliberation when he killed Tonya. In light of this evidence, defendant cannot show that there is a reasonable possibility that the outcome of the trial would have been different if the trial court had excluded the statements. *State v. Hipps*, 348 N.C. 377, 395, 501 S.E.2d 625, 636 (1998), *cert. denied*, —— U.S. ——, 119 S. Ct. 1119 (1999); G.S. 15A-1443(a) (1988).

**[6]** We next determine whether the trial court erred when it allowed the State to publish to the jury a photograph of defendant taken the morning of the killing in which defendant's legs were in shackles. The photograph revealed blood on defendant's hands and clothes and small knife wounds on defendant's hands. Because defendant stated "no objection" when the State moved to introduce the photograph, we review for plain error. Defendant contends that the photographs were "highly prejudicial to defendant in the same way that his appearance in shackles would have been." As a general rule, a defendant in a criminal case is entitled to appear at trial free from shackles to protect the presumption of innocence. *State v. Thomas*, 344 N.C. 639, 651, 477 S.E.2d 450, 456 (1996), *cert. denied*, —— U.S. ——, 118 S. Ct. 84 (1997). "Before deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." *State v. Gardner*, 315 N.C. 444, 450, 340 S.E.2d 701, 706 (1986). Here, the State offered overwhelming evidence of malice, premeditation, and deliberation to support the first-degree murder conviction. Based on the record, we have concluded that the jury would not have reached a different verdict if the photograph had been excluded and that the submission of the photograph did not constitute plain error. This assignment of error is overruled.

**[7]** We next consider whether the trial court abused its discretion when it denied defendant's motion to exclude photographs of the victim's body, including Exhibits 12, 14, 16, 64, 65, and 67, after she was killed. The trial court allowed the State to publish to the jury photographs of the victim's wounds taken at the crime scene and autopsy photographs taken at the same angles and showing the same wounds as the photographs taken at the crime scene. Defendant contends that the photographs are unduly repetitive and their probative value is outweighed by their prejudicial effect. *See* G.S. 8C-1, Rule 403 (1992). "Photographs of homicide victims are admissible at trial even if they are 'gory, gruesome, horrible, or revolting, so long as they are used by a witness to illustrate his testimony and so long as an excessive number of photographs are not used solely to arouse the passions of the jury.'" *State v. Thompson*, 328 N.C. 477, 491, 402 S.E.2d 386, 394 (1991) (quoting *State v. Murphy*, 321 N.C. 738, 741, 365 S.E.2d 615, 617 (1988)). The State may introduce photographs in a murder trial to illustrate testimony regarding the manner of killing to prove circumstantially the elements of first-degree murder. *State v. Rose*, 335 N.C. 301, 319, 439 S.E.2d 518, 528, *cert. denied*, 512 U.S. 1246, 114 S. Ct.

2770 (1994). What represents "an excessive number of photographs" and whether the "photographic evidence is more probative than prejudicial" are matters within the trial court's sound discretion. *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Factors a court may consider include what the photographs depict, the level of detail, the manner of presentation, and the scope of accompanying testimony. *Id.* at 285, 372 S.E.2d at 527.

Here, the photographs were neither cumulative nor excessive in number and their probative value was not substantially outweighed by the danger of unfair prejudice. In fact, the trial court excluded several pictures because it deemed them repetitive. The photographs revealed the numerous wounds on Tonya and were relevant as circumstantial evidence to illustrate the testimony of China Wilds that defendant killed Tonya with malice, premeditation, and deliberation. *State v. Smith*, 320 N.C. 404, 416, 358 S.E.2d 329, 336 (1987). The photographs were also relevant to help the jury determine whether to find as an aggravating circumstance that the murder was especially, heinous, atrocious, or cruel. Furthermore, the trial court did not err in admitting photographs from both the crime scene and the autopsy because the autopsy photographs revealed wounds that could not be seen in the crime scene photographs because of the blood covering Tonya's body. *State v. Kandies*, 342 N.C. 419, 443, 467 S.E.2d 67, 80, *cert. denied*, 519 U.S. 894, 117 S. Ct. 237 (1996). This assignment of error is overruled.

[8] We next address whether the trial court abused its discretion when it admitted a tape of the "911" conversation between Tonya's eight-year-old daughter China Wilds and the Davidson County Sheriff's Office. Defendant argues that the introduction of the tape into evidence "added nothing to the State's case by way of evidence" and that the prejudicial effect of the tape in arousing the passions of the jury outweighed its probative value. We disagree.

Under G.S. 8C-1, Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." G.S. 8C-1, Rule 403 (1992). The decision to exclude evidence under Rule 403 is left to the broad discretion of the trial court, and will only be reversed on appeal upon a showing that the decision was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision. *State v. Womble*, 343 N.C. 667, 690, 473 S.E.2d 291, 304 (1996), *cert. denied*, 519 U.S. 1095, 117 S. Ct. 775, *reh'g denied*, 520 U.S. 1111, 117 S. Ct. 1122 (1997). Here, the 911 tape had probative value because it was offered to cor-

roborate the testimony of eight-year-old China Wilds regarding the events leading to her mother's death. *State v. Jordan*, 128 N.C. App. 469, 475-76, 495 S.E.2d 732, 736-37, *review denied*, 348 N.C. 287, 501 S.E.2d 914 (1998). Defendant here has not shown that the decision of the trial court to admit the 911 tape was not the result of a reasoned choice. Accordingly, this assignment of error is overruled.

[9] Defendant next contends that the trial court abused its discretion when it denied defendant's motion to sequester witnesses. Defendant contends that "it becomes apparent upon a review of the transcript that the witnesses offering hearsay testimony used the voir dire and trial testimony of those who came before them to educate themselves and 'strengthen' their testimony." A ruling on a motion to sequester witnesses rests within the sound discretion of the trial court, and the court's denial of the motion will not be disturbed in the absence of a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Call*, 349 N.C. 382, 400, 508 S.E.2d 496, 507-08 (1998). Here, we conclude that defendant has not shown that the trial court's ruling was so arbitrary that it could not have been the result of a reasoned decision. This assignment of error is overruled.

After a careful review of the record, we conclude that defendant received a fair trial free of prejudicial error.

No error.

Judge EDMUNDS concurs with separate opinion.

Judge SMITH concurs.

Judge EDMUNDS concurring.

Although I concur in the majority's analysis and holding, I write separately to address defendant's motion to exclude witnesses from the trial. Both North Carolina Rule of Evidence 615 and N.C. Gen. Stat. § 15A-1255 (1997) are permissive, allowing the trial court discretion to exclude witnesses. *See State v. Ball*, 344 N.C. 290, 474 S.E.2d 345 (1996), *cert. denied*, 520 U.S. 1180, 137 L. Ed. 2d 561 (1997). I agree that no abuse of discretion has been shown under the facts of this case. In comparison with the North Carolina rule, Federal Rule of Evidence 615 *requires* exclusion of witnesses upon motion of a party. Those with experience in state and federal trials cannot fail

to have observed the impact of these different rules. Testimony provided by witnesses who hear each other testify often converges. This effect, while not necessarily sinister, appears to be a reflection of human nature; it can lead irresolute witnesses, consciously or not, to conform their testimony to what they have heard before, undermining a jury's ability to evaluate the evidence provided by each witness. Particularly in cases as consequential as the capital murder case at bar, trial courts should be mindful of the words of the Commentary to North Carolina Rule of Evidence 615: "[T]he practice should be to sequester witnesses on request of either party unless some reason exists not to."