An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1082

Filed 19 November 2025

Johnston County, No. 21CR051550-500

STATE OF NORTH CAROLINA

       v.

DEYSI MARTINEZ

Appeal by Defendant from Judgment entered 4 May 2023 by Judge Paul A. Holcombe, III, in Johnston County Superior Court. Heard in the Court of Appeals 26 August 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Benjamin Szany, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender John F. Carella, for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Deysi Martinez (Defendant) appeals from a Judgment entered pursuant to a jury verdict finding her guilty of First-Degree Murder. The Record before us, including evidence presented at trial, tends to reflect the following:

On the evening of 3 April 2021, Defendant, Martin Garcia—Defendant's boyfriend and the victim in this case—and Joel Silva, Defendant's childhood friend, went out for drinks. At 3:32 a.m., after returning home, Defendant called 911 and stated she needed an officer at 128 Liberty Lane[1] because Garcia was hitting her.

Sergeant G.W. Coley, II, the first officer on the scene, arrived around 3:45 a.m. Sergeant Coley was "somewhat familiar" with Defendant and Garcia; he had been to the home before because of previous "domestic disturbances[.]" On his approach to the front door, Sergeant Coley observed blood on the porch and on the door. He heard someone to his right and saw Garcia lying in the grass to the side of the porch. Garcia had blood on his chest, seemed dazed, could not communicate, and appeared to be attempting to get up. Garcia's head was "moving left and right" but he was verbally nonresponsive.[2] When the scene was cleared to be safe for EMS to approach, it was discovered Garcia had been stabbed and had died from his injuries.

Sergeant Coley, now joined by Deputy Matthew Chism, knocked on the front door of the home, but no one answered. The officers forced the door open and, upon entering the home, observed blood in the living room and kitchen. Sergeant Coley found Defendant in a bedroom, where she appeared to be asleep. Sergeant Coley

---

[1] Defendant's home address.

[2] At 3:37 a.m., five minutes after Defendant called 911—but before officers arrived on the scene—Garcia had also called 911 and asked for an ambulance at 128 Liberty Lane. Garcia was groaning, his responses to the dispatcher's questions were mostly unintelligible, and he eventually fell silent while the call was still ongoing.

woke Defendant; she told Sergeant Coley she had been home all night and there was no one else home. Defendant later became belligerent when told her house was a crime scene and she would have to leave. Eventually, Defendant was brought to the police station.

At the station, Defendant provided her version of events in a recorded interview with Detective Randy Ackley. She told Detective Ackley she had left the bar alone that evening and later received a call from Garcia saying he had been in a car wreck. She stated she had called 911 because Garcia was threatening her. She claimed she then went to bed until she was awoken by Sergeant Coley.

After a break, Defendant commented she knew Garcia was suicidal but did not think he would have stabbed himself. During the interview, although he referred to a chest injury, Detective Ackley had not specifically informed Defendant that Garcia had been stabbed.

The State's medical examiner concluded Garcia died of a stab wound to the chest, which resulted in severe internal bleeding. According to the medical examiner, it was "possible" but "awkward" for a person to inflict an injury on himself in that location and not a typical location for suicide. Additionally, Garcia suffered a stab wound that perforated his left arm, injuries to his torso, a cut on his left lower eyelid, and bruising. The medical examiner classified the death as a homicide.

On 3 May 2021, Defendant was indicted for Murder, Obstructing Justice, Assault Inflicting Serious Physical Injury on a Law Enforcement Officer, Misuse of

the 911 System, and two counts of Simple Assault. Prior to trial, the State dismissed all charges except for Murder. Additionally, the State filed notice of its intent to offer "hearsay statements that Martin Garcia made to his mother[ ] . . . regarding his relationship with the Defendant." Counsel for Defendant objected to the admission of this evidence and filed multiple pretrial motions to exclude this and other evidence under Rules 403, 404, and the hearsay rules, including evidence of "any alleged acts of prior misconduct on the part of" Defendant.

The case came on for trial on 17 April 2023. At trial, Silva testified he, Defendant, and Garcia had left the bar together in Defendant's car; Defendant was the driver. According to Silva, Garcia complained Defendant was not driving straight and grabbed the steering wheel, causing the car to veer off the road. Garcia exited the car and ran away. Defendant and Silva eventually got out of the car, walked down the road, and Defendant called an Uber for herself.

The Uber Driver testified he had initially picked Defendant up alone, as Defendant would not let Silva into the Uber. However, Defendant asked the Uber Driver to stop at a McDonald's where they picked up Garcia. He testified Defendant and Garcia were arguing with each other throughout the duration of the car ride, and Defendant had punched Garcia in the face. Defendant and Garcia were dropped off at 128 Liberty Lane at 3:24 a.m.

Garcia's mother, Rosalinda Grady, also testified. Prior to admitting her testimony, the trial court held a Rule 404(b) hearing. Garcia's mother testified on

voir dire about an incident on 1 April 2020 where Defendant had allegedly assaulted Garcia. In addition to Grady's testimony, the State sought to admit photographs Grady had taken of the injuries Garcia allegedly suffered. At the end of the hearing, the trial court concluded it would allow both Grady's testimony and the photographs into evidence, subject to a limiting instruction.

At the close of the State's evidence, Defendant, through counsel, moved to dismiss the case for insufficient evidence. The trial court denied this Motion. Defendant then put on her own evidence, including the testimony of a clinical psychologist and of an expert medical examiner. The psychologist testified Garcia had a history of suicidal thoughts, and the medical examiner testified it was possible Garcia had self-inflicted the fatal wound.

At the close of all evidence, defense counsel renewed its Motion to Dismiss. The trial court again denied the Motion.

On 3 May 2023, the jury found Defendant guilty of First-Degree Murder. The trial court sentenced Defendant to life imprisonment without parole. Defendant gave oral Notice of Appeal in open court.

## Issues

The issues on appeal are whether the trial court erred by: (I) admitting evidence of Defendant's alleged prior assault on Garcia; and (II) denying Defendant's Motions to Dismiss.

## Analysis

I.     Evidence of Alleged Prior Assault

Defendant argues certain evidence of the alleged 1 April 2020 assault should not have been admitted because it was: (A) hearsay not falling within any exception and (B) inadmissible under Rules 404(b) and 403.

A. *Hearsay*

As a threshold matter, the State contends Defendant failed to fully preserve her hearsay argument. "Generally speaking, the appellate courts of this state will not review a trial court's decision to admit evidence unless there has been a timely objection." *State v. Ray*, 364 N.C. 272, 277, 697 S.E.2d 319, 322 (2010) (citing *State v. Thibodeaux*, 352 N.C. 570, 581-82, 532 S.E.2d 797, 806 (2000), *cert. denied*, 531 U.S. 1155, 121 S. Ct. 1106, 148 L. Ed. 2d 976 (2001) (Mem.)). "To be timely, an objection to the admission of evidence must be made at the time it is actually introduced at trial." *Id.* (quotation marks and citation omitted). "Moreover, it is of no consequence if the witness' actual testimony substantively coincides with counsel's preliminary assumptions. For purposes of appeal preservation, objections to testimony must be contemporaneous with the time such testimony is offered into evidence." *Thibodeaux*, 352 N.C. at 581-82, 532 S.E.2d at 806 (citations omitted).

On appeal, Defendant challenges the admission of the following testimony, specifically, Grady's testimony that on 1 April 2020, Garcia said Defendant had beaten him and he was "scared for the baby"[3]:

> [The State]: All right. Can you explain to the members of the jury what [Garcia's] demeanor was like when he called you on the phone?
>
> [Grady]: When he called me he was crying, and over everything else he was scared.
>
> [The State]: And –
>
> [Grady]: She – and then [Garcia] told me that [Defendant] had beaten him.
>
> [Defense Counsel]: Objection. Your Honor, it's hearsay.
>
> . . . .
>
> [Grady]: When I went to pick him up, because since it was nighttime, I only saw the marks on his face at that time. But he was just crying a lot, and saying that he was scared for the baby because the baby had stayed with her.
>
> [Defense Counsel]: Objection.

These are the only portions of Grady's testimony to which Defendant has both objected to at trial and presented arguments on appeal. Thus, our review is limited to these portions of Grady's testimony.

The trial court's primary basis for admitting Grady's testimony was Rule 803(3). Under Rule 803(3), "[a] statement of the declarant's then existing state of

---

[3] Defendant and Garcia share a child together.

mind, emotion, sensation, or physical condition" is admissible even when given for the truth of the matter asserted. N.C. Gen. Stat. § 8C-1, Rule 803(3) (2023).

Defendant argues Grady's testimony does not fall under Rule 803(3) because Garcia did not say he was afraid of Defendant. In so arguing, Defendant likens this case to *State v. Lesane*. There, a witness testified the victim "acted frightened[ ]" and had told her the defendant had "stabbed this guy seventeen times." 137 N.C. App. 234, 240, 528 S.E.2d 37, 42 (2000). The Court, in holding the testimony should not have been admitted, explained: "Absent an actual statement of emotion by [the victim], any statement of fact that could purportedly serve as a basis for this emotion is outside the scope of Rule 803(3)." *Id.* at 240-41, 528 S.E.2d at 42.

Here, however, the trial transcript indicates Grady testified, "[Garcia] was just crying a lot, and *saying that he was scared for the baby*[.]" (emphasis added). Thus, unlike the witness testimony in *Lesane*, Grady's testimony contains a statement of emotion by Garcia.

We believe the facts of this case are more like *State v. Wilds*. There, the victim's mother testified the victim would often come over to her house to sleep " 'because she was afraid to close her eyes around' " the defendant and the victim "was afraid that [the] defendant 'would kill her.' " 133 N.C. App. 195, 204, 515 S.E.2d 466, 474 (1999). The Court ruled this testimony was admissible to show the victim's state of mind, "despite the fact that the statements also contained descriptions of factual events." *Id.* at 205, 515 S.E.2d at 475. The Court noted it was not necessary for the

victim to "state explicitly to each witness that she was afraid, as long as the 'scope of the conversation . . . related directly to [her] existing state of mind and emotional condition.' " *Id.* at 206, 515 S.E.2d at 475 (alterations in original) (quoting *State v. Mixion*, 110 N.C. App. 138, 148, 429 S.E.2d 363, 368, *review denied*, 334 N.C. 437, 433 S.E.2d 183 (1993) (Mem.)).

In the instant case, there is a statement of emotion: Grady testified Garcia said he "was scared for the baby[.]" This statement was made "contemporaneously with and in explanation of" Garcia's statement Defendant had beaten him. *State v. Murillo*, 349 N.C. 573, 588, 509 S.E.2d 752, 761 (1998) (quoting *State v. Westbrooks*, 345 N.C. 43, 60, 478 S.E.2d 483, 493 (1996)). " 'The factual circumstances surrounding [his] statements of emotion serve only to demonstrate the basis for the emotions.' " *Wilds*, 133 N.C. App. at 206, 515 S.E.2d at 475 (quoting *State v. Gray*, 347 N.C. 143, 173, 491 S.E.2d 538, 550 (1997), *abrogated on other grounds by*, *State v. Long*, 354 N.C. 534, 557 S.E.2d 89 (2001)).

Thus, Garcia's statement Defendant "had beaten him" is a description of a factual event but, like the statements at issue in *Wilds*, is admissible under Rule 803(3) because it shows his state of mind. Specifically, it demonstrates the basis for

his fear. Therefore, the testimony was admissible under Rule 803(3). Consequently, the trial court did not abuse its discretion in admitting the testimony.[4]

B. *Rule 404(b) and Rule 403*

Defendant also challenges the admission of Grady's testimony and the photographs under Rules 404(b) and 403. Because Defendant did not object to Grady's testimony under Rule 404(b) or Rule 403 at trial, she has failed to preserve this issue on appeal. *See Thibodeaux*, 352 N.C. at 581-82, 697 S.E.2d at 806 (citations omitted).

However, Defendant did object to the admission of the photographs at trial:

> [The State]: Your Honor, the State would now move to introduce [the photographs of Garcia's injuries] into evidence.
>
> [Defense Counsel]: Objection on prior grounds.
>
> [Trial Court]: All right. The Court will overrule the objection.

The "prior grounds" in defense counsel's objection included an objection to the admission of the photographs under Rules 404(b) and 403.[5] Thus, Defendant's arguments as to the photographs are preserved for our review.

---

[4] Because we conclude the trial court did not abuse its discretion in admitting the testimony under Rule 803(3), we do not address the trial court's alternative grounds for its admission under Rules 803(2) and 803(24).

[5] Although Defendant's pretrial motion only argued the photographs were inadmissible under Rule 403—not Rule 404(b)—Defendant ultimately obtained a ruling from the trial court on the admissibility of the photographs under Rule 404(b) pursuant to a Rule 404(b) hearing.

Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2023). However, such evidence may be admissible for any other purpose, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." *Id.* This list "is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53 (citation omitted), *cert. denied*, 516 U.S. 994, 116 S. Ct. 530, 133 L. Ed. 2d 436 (1995) (Mem.). Thus, Rule 404(b) is "a clear general rule of inclusion[.]" *State v. Coffey*, 326 N.C. 268, 278, 389 S.E.2d 48, 54 (1990) (emphasis removed). "We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

In the instant case, the State argues the photographs were properly admitted to show Defendant's intent, malice, premeditation, and deliberation. Indeed, at trial, counsel for the State argued, based on the evidence surrounding the 1 April 2020 assault, the jury should find Defendant had the requisite intent for first-degree murder. Likewise, in making its Rule 404(b) determination, the trial court found the photographs were probative on the issues of Defendant's intent, malice, premeditation, and deliberation.

Nonetheless, Defendant argues it was impermissible for the State to use the incident as evidence of the necessary intent for First-Degree Murder. We disagree. Our Courts have been clear that "even though evidence presented may tend to show that the defendant may have committed other crimes or 'bad acts', or that the defendant had a propensity to commit those acts, it will be admissible if it is relevant for some other purpose." *State v. Bynum*, 111 N.C. App. 845, 848, 433 S.E.2d 778, 780 (1993) (citation omitted); *see also State v. Ervin*, _ N.C. App. _, _, 914 S.E.2d 576, 584 (2025) ("Even though some evidence of prior acts may tend to show a defendant's propensity to commit the charged crime, such evidence is admissible under Rule 404(b) so long as it is used for some other purpose." (citing *State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987))). Intent is one such permissible purpose. N.C. Gen. Stat. § 8C-1, Rule 404(b) (2023).

Defendant also argues the 1 April 2020 alleged assault is too dissimilar and temporally removed from Garcia's murder to be admissible under Rule 403. Indeed, "[d]espite the inclusive nature of Rule 404(b), it is still 'constrained by the requirements of similarity and temporal proximity.' " *State v. Mangum*, 242 N.C. App. 202, 209, 773 S.E.2d 555, 561-62 (2015) (quoting *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002)). "In other words, 'the ultimate test of admissibility [under Rule 404(b)] is whether the incidents are sufficiently similar to those in the case at bar and not so remote in time as to be more prejudicial than probative under . . . Rule 403[.]' " *Id.* at 209, 773 S.E.2d at 562 (citation omitted).

However, the issue of whether the 1 April 2020 incident was sufficiently similar to the incident at bar is not highly pertinent to our analysis because the evidence was admitted to demonstrate Defendant's intent and the elements of first-degree murder. *See State v. Golden*, 224 N.C. App. 136, 144, 735 S.E.2d 425, 431 (2012) (where evidence of the defendant's prior incidents with the victim were properly admitted to show the defendant's intent, "similarity" was not relevant); *State v. Haskins*, 104 N.C. App. 675, 682, 411 S.E.2d 376, 382 (1991) ("When determining the relevancy of other crimes evidence offered to prove defendant's motive, the degree of similarity between the uncharged and the charged crimes is considerably less important than when such evidence is offered to prove identity." (citation omitted)).

Further, we are not convinced the incident was too temporally remote merely because one year had passed between the alleged prior assault and the murder. *See Beckelheimer*, 366 N.C. at 132, 726 S.E.2d at 160 (noting admission under Rule 404(b) has been upheld even when the acts are separated by "long lapse[s] of years"). "[R]emoteness in time is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident; remoteness in time generally affects only the weight to be given such evidence, not its admissibility." *State v. Stager*, 329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991) (citing *State v. Smoak*, 213 N.C. 79, 93, 195 S.E. 72, 80 (1938)) (allowing admission of a murder committed ten years before the charged offense).

Thus, under these circumstances, we conclude the photographs of the injuries Garcia allegedly suffered were admissible under Rules 404(b) and 403. Therefore, the trial court did not err in admitting the photographs.

II. Motions to Dismiss

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citation omitted). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion [to dismiss] should be allowed." *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455 (citation omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223

(1994) (citation omitted). However, "[w]hether the State has offered such substantial evidence is a question of law for the trial court." *State v. McKinney*, 288 N.C. 113, 119, 215 S.E.2d 578, 583 (1975) (citations omitted).

In the present case, Defendant moved to dismiss the First-Degree Murder charge for insufficient evidence. Our General Statutes set out the offense of First-Degree Murder, in pertinent part, as follows:

> A murder which shall be perpetrated by means of . . . any . . . kind of willful, deliberate, and premeditated killing, . . . shall be deemed to be murder in the first degree[.]

N.C. Gen. Stat. § 14-17(a) (2023). Defendant contends the trial court erred in denying her Motions to Dismiss because the State failed to present substantial evidence of premeditation, deliberation, and the specific intent to kill.

"Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Bullock*, 326 N.C. 253, 257, 388 S.E.2d 81, 83 (1990) (citation omitted). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *State v. Davis*, 349 N.C. 1, 33, 506 S.E.2d 455, 472 (1998) (citations omitted). In proving the murder was deliberated, the State must also produce evidence of the specific intent to kill. *State v. Keel*, 333 N.C. 52, 58, 423 S.E.2d 458, 462 (1992) ("The specific intent to kill is a necessary component

- 15 -

of deliberation[.]" (citing *State v. Jackson*, 317 N.C. 1, 23, 343 S.E.2d 814, 827 (1986),

*cert. granted and judgment vacated on other grounds*, 479 U.S. 1077, 107 S. Ct. 1271,

94 L. Ed. 2d 133 (1987) (Mem.))).

> Some of the circumstances from which premeditation and deliberation may be implied are (1) absence of provocation on the part of the deceased, (2) the statements and conduct of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*State v. Olson*, 330 N.C. 557, 565, 411 S.E.2d 592, 596 (1992) (citing *State v. Gladden*,

315 N.C. 398, 430-31, 340 S.E.2d 673, 693 (1986)).

In the case *sub judice*, the evidence tends to show eight minutes elapsed

between the time Defendant and Garcia were dropped off by the Uber Driver and

Defendant's 911 call, and the two were fighting during the length of the Uber ride.

This is ample time for Defendant to have premeditated the murder. *See Bullock*, 326

N.C. at 257, 388 S.E.2d at 83 (citation omitted). The evidence also tended to show a

lack of provocation on the part of Garcia: Defendant did not assert she acted in self-

defense, did not assert Garcia had provoked or attacked her, and had no injuries—

suggesting there had not been a struggle between Defendant and Garcia prior to the

murder. *See State v. Weathers*, 339 N.C. 441, 452, 451 S.E.2d 266, 272 (1994) (finding

evidence of premeditation and deliberation where the defendant was uninjured and

"did not mention any provocation [by the victim] in any of his statements to law enforcement").

Additionally, the couple's history of domestic violence suggests Defendant's actions were premeditated and deliberated. Presuming the evidence of Defendant's alleged 1 April 2020 assault on Garcia was inadmissible, additional unchallenged evidence tended to show the police had previously responded to multiple domestic disturbances between Defendant and Garcia. Further, the brutality, nature, and number of Garcia's wounds is evidence from which a jury could infer premeditation and deliberation. *See State v. Fisher*, 318 N.C. 512, 518, 350 S.E.2d 334, 338 (1986) (finding multiple stab wounds, including two wounds to the chest, one of which hit the deceased's heart, tended to show the killing was done in a brutal manner). Here, the evidence shows Garcia suffered multiple stab wounds—including one which went completely through his left upper arm—as well as additional abrasions and contusions.

Finally, the evidence tends to show Defendant tried to minimize the appearance of her involvement immediately after the murder. Within an hour of the incident, Defendant was found in bed, apparently asleep. Defendant denied Garcia being in the house that evening. Additionally, Defendant intimated to police that Garcia could have stabbed himself. Thus, there was evidence tending to show Defendant had a "planned strategy to pretend [she] had nothing to do with the murder and to avoid detection as the perpetrator." *State v. Branche,* 291 N.C. App.

214, 223, 895 S.E.2d 597, 604-05 (2023) (concluding there was sufficient evidence of premeditation and deliberation); *see also State v. Sierra*, 335 N.C. 753, 759, 440 S.E.2d 791, 795 (1994) (finding evidence of premeditation and deliberation where the defendant did not check on his victim, returned home, hid the murder weapon, and went to sleep).

Thus, viewed in the light most favorable to the State, there was substantial evidence of premeditation, deliberation, and the specific intent to kill. Therefore, the trial court did not err in denying Defendant's Motions to Dismiss. Consequently, the trial court did not err in entering Judgment on the verdict.

## **Conclusion**

Accordingly, for the foregoing reasons, we conclude there was no error at trial and affirm the Judgment of the trial court.

NO ERROR.

Judges TYSON and FLOOD concur.

Report per Rule 30(e).