STATE OF NORTH CAROLINA v. BILLY JOE BARE

No. COA08-221

(Filed 16 December 2008)

**Evidence— photographs of murder victim—admissibility**

There was no abuse of discretion in a first-degree murder prosecution in the admission of photographs of the dismembered and decomposed body of the victim. The photos were introduced to illustrate the testimony of an SBI agent about the

condition of the body. Although there was no limiting instruction, none was requested.

Appeal by Defendant from judgments entered 10 August 2007 by Judge A. Moses Massey in Alleghany County Superior Court. Heard in the Court of Appeals 21 October 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General H. Dean Bowman, for the State.*

*Kathryn L. VandenBerg, for Defendant.*

ARROWOOD, Judge.

Billy Joe Bare (Defendant) appeals from judgments entered on his convictions of first-degree murder, conspiracy to commit murder, and felony breaking and entering. We find no error.

In August 2006 Defendant was indicted on charges of the first-degree murder of Juan Lopez. He was later indicted on additional charges of conspiracy to commit first-degree murder, robbery with a dangerous weapon, and felony breaking and entering.

Defendant was tried before an Alleghany County jury in August 2007. The State's evidence at trial, summarized as pertinent to this appeal, tended to show the following: In 2006 Carol Caudill and her husband owned a trailer on Chevy Lane, in rural Alleghany County. Behind the trailer was a small creek bordered by an old barbed wire fence, and a wooded area beyond that. Her son, Tim Caudill, stayed in the trailer; another son, Mark Caudill, lived next door. Tim moved out in early March and on 4 March 2006 Carol Caudill rented the trailer to Juan Lopez. She never saw Lopez again. At the end of March, a friend of Lopez's asked Carol to help her find him. They went to the trailer and found the door open, a car in the yard, and untouched food on the counter. There were no signs of a struggle, but Carol asked the Alleghany County Sheriff to investigate.

In May 2006 Carol Caudill rented the trailer to James Murray. On 6 May 2006, while Murray was moving into the trailer, he noticed an unpleasant odor and looked outside the trailer. He discovered a decomposing body, later identified as that of Juan Lopez, lying face down on the creek bank. The body, which Murray described as "gruesome" and consisting of "partial flesh and bones," was covered with broken pine branches. Murray immediately called the police to the scene.

The testimony of Lonnie Dale Love was the strongest evidence of Defendant's involvement in the murder. Love testified that in March 2006 he was staying at Mark Caudill's house. Over the weekend of 18 March 2006, Mark's house was the scene of a drug party that included Mark, Love, Defendant, and several other men. The group used cocaine extensively over the weekend, and Defendant played a major role in keeping the party supplied with drugs. Love testified that Defendant left the party repeatedly, each time disappearing briefly and returning in about ten minutes with more cocaine. Defendant told Love that he was buying the cocaine from Lopez, who had advanced the cocaine on credit, with the understanding that Defendant would sell it to others and then repay Lopez. By Sunday evening Defendant owed Lopez more money than he had available. Defendant told Love that he might break into Lopez's house and steal some money with which to repay Lopez for the drugs, and also said that if he followed this plan he might "have to kill" Lopez.

On Monday, 20 March 2006, Love and Defendant broke into Lopez's trailer and stole cocaine and a gun. After using the cocaine, Defendant telephoned Lopez and asked him to meet Defendant at Lopez's trailer. When Lopez arrived, Defendant was outside the trailer with the stolen gun concealed in his sleeve, and Love was watching from nearby. Love saw Defendant and Lopez talk briefly before walking up onto the porch to the front door. As they moved out of sight around the doorway, Love heard a gunshot and then what he believed to be Lopez's body falling to the ground. Defendant ran into the yard waving the gun. He was agitated and shaking, and told Love he "had to kill" Lopez. When Love got to the porch, he saw that Lopez had been shot in the back of the head and was lying in a pool of blood. Love testified that they carried Lopez's body to the creek bank and covered it with branches. Love returned to Mark's house, while Defendant stayed to clean up the murder scene. Defendant later burned certain items of evidence and washed his clothes.

Defendant threatened to kill Love if he told anyone about Defendant murdering Lopez. Love was frightened of Defendant and went to stay with his girlfriend in Moore County. When Lopez's body was discovered in May, Love panicked and drove back to Alleghany County in his girlfriend's car. Several days later, law enforcement officers arrested Love for the unauthorized use of his girlfriend's car. On the way to the police station, Love volunteered information about Lopez's killing, and later gave police a statement detailing the circumstances of the shooting. Love testified that he had been charged

with the same offenses as the Defendant, and that he had not been promised any leniency or plea bargain.

Love's testimony was corroborated in part by other evidence. Several witnesses testified about the drug party at Mark Caudill's, corroborating Love's testimony that Defendant left the party numerous times, returning in a few minutes with more cocaine. Defendant's former girlfriend corroborated Love's testimony that Lopez had advanced cocaine to Defendant on credit, and that Defendant discussed robbing and killing Lopez. The North Carolina Medical Examiner verified that Lopez died from a gunshot to the back of the head. Additionally, Love's statement to the police, which largely corroborated his trial testimony, was read aloud to the jury.

Defendant's evidence tended to show that he was at work when Lopez was killed, and that a Robert Billings may have been involved in killing or robbing Lopez.

Following the presentation of evidence, the court dismissed the charge of robbery with a dangerous weapon. On 10 August 2007 Defendant was found guilty of the remaining charges. With respect to the jury's verdict on the murder charge, the jury found defendant guilty of first-degree murder on the basis of both the theory of malice, premeditation, and deliberation and under the felony murder rule. He was sentenced to life in prison without parole for first-degree murder, and received a consolidated sentence of 225 to 279 months for the convictions of breaking and entering and conspiracy to commit murder, that sentence to run at the expiration of the life sentence for murder. Defendant appeals from these judgments and convictions.

---

Defendant raises a single issue on appeal, arguing that the trial court erred by overruling his objection to the admission of certain photographs of the deceased. Defendant contends that "the admission of photographs showing the decedent's dismembered and decomposed body strewn through the surrounding woods was prejudicial error, as this evidence was irrelevant, excessive, and inflammatory." We disagree.

The standard of review of a court's admission of photographs is well known:

We review the trial court's decision to admit the evidence pursuant to Rule 403 for an abuse of discretion. . . "In our review,

we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record."

*State v. Peterson*, 361 N.C. 587, 602-03, 652 S.E.2d 216, 227 (2007) (citing *State v. Al-Bayyinah*, 359 N.C. 741, 747-48, 616 S.E.2d 500, 506-07 (2005); and quoting *State v. Lasiter*, 361 N.C. 299, 302, 643 S.E.2d 909, 911 (2007)). "Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in the light of the illustrative value of each likewise lies within the discretion of the trial court. Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citing *State v. Sledge*, 297 N.C. 227, 254 S.E.2d 579 (1979); and *State v. Parker*, 315 N.C. 249, 337 S.E.2d 497 (1985)).

"We have held that '[p]hotographs are usually competent to be used by a witness to explain or illustrate anything that it is competent for him to describe in words.' " *State v. Lloyd*, 354 N.C. 76, 98, 552 S.E.2d 596, 513 (2001) (quoting *State v. Watson*, 310 N.C. 384, 397, 312 S.E.2d 448, 457 (1984)) (internal citation omitted). Moreover, " '[p]hotographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury.' " *State v. Blakeney*, 352 N.C. 287, 309-10, 531 S.E.2d 799, 816 (2000) (quoting *Hennis*, 323 N.C. at 284, 372 S.E.2d at 526).

In the instant case, Defendant objected to the introduction of State's exhibits thirteen through twenty-three, photographs of Lopez's body in a state of partial decomposition, on the grounds that the photos were prejudicial and served no evidentiary purpose. The trial court ruled that:

The Court has examined the tendered exhibits. The Court—it does not appear that the exhibits are unnecessarily duplicative. It does appear that the exhibits illustrate different objects that were discovered at the scene that appeared to have a connection with the subject of this case.

The Court—it does not appear that there is anything about these tendered photos that would be likely to inflame the jury, and it does not appear to the Court that the photos would be unfairly

prejudicial to the defendant. The Court respectfully overrules [the] objection to the tendering of these photos.

The challenged exhibits include the following: (1) three photographs of Lopez's trunk and lower body, depicting the remains of a fire, the mummification and decay of his flesh, the branches placed over the body, and the blue jeans and shoes Lopez was wearing; (2) two photos of a skull and jawbone, and four pictures of other bones, all largely devoid of flesh; (3) one photograph of a hand that is partially decayed, and; (4) two photographs showing the underbrush where Lopez was found, without a clear view of the body itself.

These photographs were introduced to illustrate testimony by SBI Special Agent Van Williams about the condition of Lopez's body when it was discovered. Williams testified without objection that, by the time Lopez's remains were found, "some of the bones were actually exposed and the body was in a state of mummification." His body had been partially eaten by animals, and was missing "a part of [an] arm, fingers, and a head." These body parts were found "in close proximity to the body." Items of clothing were found near the body.

The exhibits at issue are necessarily unappealing and unfortunate. However, we conclude that the trial court's decision to admit them was not an abuse of discretion. " 'Even where a body is in advanced stages of decomposition and the cause of death and identity of the victim are uncontroverted, photographs may be exhibited showing the condition of the body and its location when found.' " *State v. Gregory*, 340 N.C. 365, 387, 459 S.E.2d 638, 650-51 (1995) (quoting *State v. Wynne*, 329 N.C. 507, 517, 406 S.E.2d 812, 816-17 (1991)). "This Court has rarely held the use of photographic evidence to be unfairly prejudicial, and the case presently before us is distinguishable from the few cases in which we have so held." *State v. Robinson*, 327 N.C. 346, 357, 395 S.E.2d 402, 409 (1990). "By admitting the photographs, the trial court implicitly determined that any undue prejudice resulting from the admission of the photographs was substantially outweighed by their probative value. The trial court did not abuse its discretion, and this assignment of error is rejected." *State v. Roache*, 358 N.C. 243, 286, 595 S.E.2d 381, 410 (2004).

Defendant also notes that the jury was not given a limiting instruction on the photos. "The jury should be instructed to consider photographs for illustrative purposes only; however, where the defendant does not request that the limiting instruction be given, as he did not in this case, it is not error when the instruction is not

**ROSS v. ROSS**

[194 N.C. App. 365 (2008)]

given." *State v. Handsome*, 300 N.C. 313, 319, 266 S.E.2d 670, 675 (1980) (citations omitted).

For the reasons discussed above, we conclude that the Defendant had a fair trial, free of reversible error.

No Error.

Judges WYNN and BRYANT concur.