STATE OF NORTH CAROLINA
v.
ROBERT KENNETH STEWART

No. COA13-283

Filed 3 December 2013

**1. Evidence—homicide—testimony—relevant—state of mind**

The trial court did not commit plain error in a multiple homicide case by allowing certain testimony into evidence where the challenged testimony was relevant to show defendant's advanced planning and state of mind. Furthermore, assuming *arguendo* the admission of the testimony was erroneous, defendant failed to show that the admission of the testimony had a probable impact on the jury's finding him guilty.

**2. Evidence—homicide—photographs—relevant—illustrative**

The trial court did err in a multiple homicide case by allowing crime scene and autopsy photographs of the victim's bodies into evidence over his objection. The photographs were relevant as they

depicted the crime scene and the victims' injuries and all the photographs were introduced to illustrate witness testimony concerning either the crime scene as it existed immediately following the shootings, each victim's location in the nursing home, or the specific injuries sustained by the victims.

**3. Assault—with deadly weapon with intent to kill police officer—sufficient evidence**

The trial court did not err by denying defendant's motion dismiss the charge of assault with a deadly weapon with intent to kill a police officer. There was sufficient evidence of each element of the offense, including defendant's intent to kill the officer.

Appeal by defendant from judgments entered 3 September 2011 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 28 August 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Amy Kunstling Irene, for the State.*

*Haral E. Carlin, for defendant appellant.*

McCULLOUGH, Judge.

Robert Kenneth Stewart ("defendant") appeals from his convictions for second-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, discharging a weapon into occupied property, assault with a deadly weapon with intent to kill, assault with a firearm on a law enforcement officer, and assault by pointing a gun. For the following reasons, we find no error.

## I. Background

On the morning of 29 March 2009, approximately two weeks after defendant's wife left him, defendant went to Pine Lake Health and Rehabilitation in Carthage, North Carolina, armed with a 12-gauge shotgun and several other firearms. Defendant's estranged wife typically worked as a certified nurse's assistant on the 200 hallway of the nursing home; however, she was working in the locked Alzheimer's unit on 29 March 2009.

Shortly before 10:00 A.M., before entering the nursing home, defendant fired the long-barreled weapon at an occupied Ford truck in the parking lot three times, striking the occupant once in the left shoulder.

Thereafter, defendant entered the nursing home brandishing the shotgun. Defendant walked through the nursing home firing the shotgun at residents and staff. Seven residents and one nurse were killed.

Officer Justin Garner of the Carthage Police Department was the first officer on the scene. Officer Garner encountered defendant near the intersection of the 300 and 400 hallways while defendant was reloading the shotgun. Officer Garner instructed the defendant to drop the weapon three times, but defendant did not comply. Defendant then turned towards Officer Garner and lowered the shotgun in Officer Garner's direction. At approximately the same time, defendant and Officer Garner each fired one shot at each other. Officer Garner testified that he felt something strike his left leg and quickly stepped into a nearby room for cover. Officer Garner then reentered the hallway and saw defendant lying face down on the floor with the shotgun nearby. Officer Garner approached and secured defendant. Defendant had been shot in his shoulder.

Besides the shotgun, a loaded .38 caliber revolver and a loaded .22 caliber handgun were recovered from holsters on defendant's belt. A .22 caliber rifle was later recovered from the top of a Jeep in the nursing home parking lot. Ammunition for the firearms was recovered from defendant's pockets and a green military style satchel from around defendant's neck.

Defendant was indicted by a Moore County Grand Jury on 13 April 2009 of eight counts of first-degree murder, two counts of attempted first-degree murder, two counts of assault with a deadly weapon with intent to kill inflicting serious injury, one count of discharging a firearm into occupied property, one count of assault with a firearm on a law enforcement officer, and two counts of assault by pointing a gun. Shortly thereafter, the State filed notice that it would proceed capitally.

On 9 November 2010, the trial court ordered the venue of the proceedings be transferred to Stanly County for the limited purpose of jury selection. Defendant's case then came on for trial on 11 July 2011 in Stanly County Superior Court, the Honorable James M. Webb, Judge presiding. Following jury selection, the case was moved back to Moore County Superior Court where the jury began to hear evidence on 1 August 2011.

After weeks of evidence, closing arguments were heard on 1 September 2011. The case was then given to the jury on 2 September 2011. On 3 September 2011, the jury returned verdicts finding defendant guilty on eight counts of second-degree murder, one count of assault

with a deadly weapon with intent to kill inflicting serious injury, one count of discharging a weapon into occupied property, one count of assault with a deadly weapon with intent to kill, one count of assault with a firearm on a law enforcement officer, and two counts of assault by pointing a gun. The jury found defendant not guilty on the two counts of attempted first-degree murder. Separate judgments were entered for each of defendant's convictions and defendant was sentenced to fourteen consecutive terms totaling 1,699 months to 2,149 months imprisonment, plus 150 days. Defendant gave notice of appeal in open court.

## II. Discussion

### Testimony at Trial

**[1]** In defendant's first four issues on appeal, defendant contends that the trial court plainly erred in allowing certain testimony into evidence. Specifically, defendant challenges the relevancy of testimony from various officers concerning firearms and ammunition found in defendant's residence, ammunition found in defendant's truck, instructions for claymore mines found on defendant's kitchen table, and unfruitful searches of both defendant's and defendant's estranged wife's residences for claymore mines. Defendant did not object to the testimony at trial, but now asserts the admission of the testimony into evidence was plain error. We address defendant's arguments together.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make . . . ." N.C.R. App. P. 10(a)(1) (2013). However,

> [i]n criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(a)(4); *see also State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007), *cert. denied*, 555 U.S. 835, 172 L. Ed. 2d 58 (2008).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error had a probable impact on the jury's

finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted).

In asserting error, defendant argues the testimony from officers concerning their search for weapons and their recovery of firearms, ammunition, and instructions for claymore mines from defendant's property following the shooting was irrelevant because "[t]he evidence presented at trial was undisputed that all of the victims were killed with the shotgun[]" recovered at the scene. Moreover, defendant argues the only purpose in introducing the testimony was to portray him "as an extremely dangerous person who possessed dangerous weapons." As a result, defendant contends the testimony should have been excluded pursuant to N.C. Gen. Stat. § 8C-1, Rule 402.[1] Defendant cites *State v. Patterson*, 59 N.C. App. 650, 297 S.E.2d 628 (1982), and *State v. Samuel*, 203 N.C. App. 610, 693 S.E.2d 662 (2010), in support of his argument.

In *Patterson* the State introduced evidence of a sawed-off shotgun found in the defendant's car in addition to a pistol identified by the victim as the weapon used in the armed robbery for which the defendant was on trial. 59 N.C. App. at 652, 297 S.E.2d at 630. On appeal of the defendant's conviction, this Court granted the defendant a new trial holding "[t]he shotgun was not connected to the robbery and it was clearly not relevant to any issues in the case[]" and "there [was] a reasonable possibility that the erroneous admission of the shotgun evidence contributed to the defendant's conviction, particularly in light of the conflicting evidence regarding the identity of the defendant as the man who robbed [the victim]." *Id.* at 653-54, 297 S.E.2d at 630. Similarly, in *Samuel* the State introduced evidence of two guns found in the defendant's home in order to link the defendant to the armed robbery for which he was on trial. 203 N.C. App. at 619-20, 693 S.E.2d at 668-69. On appeal, this Court held "the evidence about the guns was wholly irrelevant and, thus, inadmissible[]" because "there was not a scintilla of evidence

---

1. Defendant also briefly alludes to N.C. Gen. Stat. § 8C-1, Rule 403 in his argument. This Court, however, has opted not to review discretionary rulings under Rule 403 for plain error. *See State v. Cunningham*, 188 N.C. App. 832, 837, 656 S.E.2d 697, 700 (2008) ("The North Carolina Supreme Court has specifically refused to apply the plain error standard of review 'to issues which fall within the realm of the trial court's discretion[.]'" (quoting *State v. Steen*, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000))).

linking either of the guns to the crimes charged." *Id.* at 621, 693 S.E.2d at 669. Additionally, "[g]iven the weakness in the State's evidence that [the d]efendant was the assailant and the substantial evidence tending to show that [the d]efendant was not the assailant," this Court concluded "that the admission of the evidence of the guns, and the prosecutor's reliance upon the revolver to link [the d]efendant to the crimes charged, had a probable impact on the jury's finding that the defendant was guilty[]" and therefore amounted to plain error. *Id.* at 624, 693 S.E.2d at 671 (citation and quotation marks omitted).

Although we acknowledge the holdings in *Patterson* and *Samuel,* we find the present case distinguishable.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2011). Pursuant to N.C. Gen. Stat. § 8C-1, Rule 402, "[a]ll relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." "Although the trial court's rulings on relevancy technically are not discretionary . . . , such rulings are given great deference on appeal." *Dunn v. Custer,* 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (citation and quotation marks omitted).

As the State points out, in the present case defendant was indicted on eight counts of first-degree murder and two counts of attempted first-degree murder. Although defendant was only convicted of second-degree murder, the State attempted to prove the first-degree offenses and therefore had to prove premeditation and deliberation. *See State v. Wilds,* 133 N.C. App. 195, 199, 515 S.E.2d 466, 471 (1999) (" 'First-degree murder is the unlawful killing of a human being with malice, premeditation and deliberation.' " (quoting *State v. Misenheimer,* 304 N.C. 108, 113, 282 S.E.2d 791, 795 (1981))). Additionally, instead of denying he was the shooter, defendant asserted insanity and automatism defenses. Accordingly, the State attempted to rebut those defenses with evidence of defendant's mental state.

The State now argues the challenged testimony was relevant to show defendant's advanced planning and state of mind. We agree. The facts that defendant had multiple firearms and various types of ammunition at his disposal were relevant to show that defendant made choices about which firearms to arm himself with and selected the correct ammunition for those firearms prior to the shootings. Additionally, the facts that officers searched for claymore mines and found instructions for claymore mines on defendant's kitchen table were relevant to show that defendant

had likely removed the instructions from the green satchel found around defendant's neck in order to fill it with ammunition to be used in the shootings. Based on the tendency of the evidence to show defendant's advanced planning and mental state prior to going to the nursing home, we hold the challenged testimony was relevant.

Moreover, assuming arguendo the admission of the testimony was error, defendant has not shown that the admission of the testimony amounted to plain error; namely, that "the error had a probable impact on the jury's finding that [he] was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334. Although defendant argues the testimony portrayed him "as an extremely dangerous person who possessed dangerous weapons[,]", defendant has not argued how the alleged prejudicial testimony impacted the jury's finding of guilt in light of the overwhelming evidence presented by the State.[2]

## Photographs

[2] In defendant's next issue on appeal, defendant contends the trial court erred by allowing crime scene and autopsy photographs of the victim's bodies into evidence over his objection. Specifically, defendant argues the photographs should have been excluded pursuant to N.C. Gen. Stat. § 8C-1, Rules 401, 402, and 403.

The photographs challenged on appeal were introduced at trial as follows: The State first sought to introduce forty-three crime scene photographs as the State's exhibits 123 through 165 to illustrate testimony of a crime scene investigator who processed the scene. Defendant objected to twelve of the photographs depicting the victims' bodies at the scene on the basis that the photographs were unduly inflammatory or prejudicial under N.C. Gen. Stat. § 8C-1, Rule 403. After reviewing the photographs, the trial court allowed all but one of the crime scene photographs into evidence; the trial court found the one excluded photograph duplicative. The State later sought to introduce the State's exhibits 320 and 322-327. Each of these exhibits consisted of an SBI prepared diagram illustrating the location where each victim was found within the nursing home with an enlarged copy of a previously admitted crime scene photograph. Defendant objected to each exhibit on the basis that the seven attached photographs were duplicative and unnecessary. After reviewing each exhibit and comparing the size of the enlarged photographs

---

2. We additionally note that the officer's testimony regarding the search of defendant's and defendant's estranged wife's residences for claymore mines was not prejudicial because the officer indicated that no such devices were found.

to the originals, the trial court allowed the exhibits into evidence for illustrative purposes. Lastly, the State introduced photographs from the victims' autopsies to illustrate testimony from medical examiners concerning the victims' injuries. Defendant specifically objected to the State's exhibit 383, a photograph of a victim's heart, pursuant to N.C. Gen. Stat. § 8C-1, Rule 403. The trial court, however, allowed the autopsy photographs into evidence.

Now on appeal, defendant first contends the photographs of the victims' bodies had no probative value because there was no issue as to the identity of the victims, the cause of the victims' deaths, the manner of the shootings, or defendant's role as the shooter. Consequently, defendant asserts the photographs served only to inflame the passions of the jury.

Addressing the issue of relevance under N.C. Gen. Stat. § 8C-1, Rules 401 and 402, we note that "[b]ecause defendant objected to the admission of [the] photograph[s] solely on the basis of [N.C. Gen. Stat. § 8C-1, Rule 403], he has waived appellate review on the issue of the relevance of the photograph[s]." *State v. Lloyd*, 354 N.C. 76, 97, 552 S.E.2d 596, 613 (2001) (citing N.C. R. App. P. 10(b)(1)). Nevertheless, had defendant properly preserved the issue of relevance for appeal, both the crime scene and autopsy photographs of the victims' bodies were relevant and properly admitted for illustrative purposes. As stated by our Supreme Court, "[p]hotographs are usually competent to be used by a witness to explain or illustrate anything that it is competent for him to describe in words. The fact that the photograph may be gory, gruesome, revolting or horrible, does not prevent its use by a witness to illustrate his testimony." *State v. Cutshall*, 278 N.C. 334, 347, 180 S.E.2d 745, 753 (1971).

> Thus, photographs of the victim's body may be used to illustrate testimony as to the cause of death[.] Photographs may also be introduced in a murder trial to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree, and for this reason such evidence is not precluded by a defendant's stipulation as to the cause of death.

*State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988) (citations omitted).

First, the photographs were relevant as they depicted the crime scene and the victims' injuries. Moreover, as discussed above, the State attempted to prove first-degree murder and attempted first-degree murder. Consequently, the photographs of the victims' bodies were not

precluded by the fact that defendant acknowledged that he shot and killed the victims; the photographs remained relevant "to illustrate testimony regarding the manner of [the shootings] so as to prove circumstantially the elements of murder [and attempted murder] in the first degree[.]" *Id.*

Having decided the photographs were relevant, the issue remains whether the photographs should have been excluded pursuant N.C. Gen. Stat. § 8C-1, Rule 403. N.C. Gen. Stat. § 8C-1, Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of *cumulative evidence*." " 'Unfair prejudice' means an undue tendency to suggest a decision on an improper basis, usually an emotional one." *Hennis*, 323 N.C. at 283, 372 S.E.2d at 526.

> Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in the light of the illustrative value of each . . . lies within the discretion of the trial court. Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.

*Id.* at 285, 372 S.E.2d at 527 (citations omitted).

Defendant contends the trial court abused its discretion because the photographs of the victims' bodies had little probative value, were unnecessarily repetitive and cumulative, and served only to inflame the passions of the jury. Moreover, defendant asserts he was prejudiced by the manner in which the photographs were presented. Defendant cites our Supreme Court's decision in *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988), in support of his arguments.

In *Hennis*, the defendant was convicted on three counts of first-degree murder and sentenced to death. On appeal, our Supreme Court addressed whether the trial court erred in admitting thirty-five photographs, nine photographs depicting the victims' bodies at the crime scene and twenty-six autopsy photographs, into evidence over the defendant's objection. *Id.* at 282-83, 372 S.E.2d at 525-26. The challenged photographs were first published to the jury by projecting them onto a large screen just above the defendant's head during witness testimony. *Id.* at 282, 372 S.E.2d at 525. Thereafter, just before the State rested its

case, the photographs were republished to the jury one at a time over the course of an hour, unaccompanied by additional testimony. *Id.* at 283, 572 S.E.2d at 526.

While reviewing whether the trial court abused its discretion by allowing the photographs into evidence, the Court explained "that when the use of photographs that have inflammatory potential is excessive or repetitious, the probative value of such evidence is eclipsed by its tendency to prejudice the jury." *Id.* at 284, 372 S.E.2d at 526. Yet,

> [t]he test for excess is not formulaic: there is no bright line indicating at what point the number of crime scene or autopsy photographs becomes too great. The trial court's task is rather to examine both the content and the manner in which photographic evidence is used and to scrutinize the totality of circumstances composing that presentation. What a photograph depicts, its level of detail and scale, whether it is color or black and white, a slide or a print, where and how it is projected or presented, the scope and clarity of the testimony it accompanies-these are all factors the trial court must examine in determining the illustrative value of photographic evidence and in weighing its use by the state against its tendency to prejudice the jury.

*Id.* at 285, 372 S.E.2d at 527.

Applying the above law, the Court in *Hennis* noted that many of the autopsy photographs were repetitive, "added nothing to the [S]tate's case as already delineated in the crime scene [photographs] and their accompanying testimony[,]" and "had potential only for inflaming the jurors." *Id.* at 286, 372 S.E.2d at 527-28. The Court further noted that "the prejudicial effect of the photographs . . . was compounded by the manner in which the photographs were presented." *Id.* at 286, 372 S.E.2d at 528. As a result, the Court held the trial court erred in admitting the photographs. Moreover, the Court found the error prejudicial and granted the defendant a new trial due to the fact "defendant was linked to the crime through circumstantial evidence and through direct evidence upon which the witnesses' own remarks cast considerable doubt." *Id.* at 287, 372 S.E.2d at 528. The Court specifically remarked, "[o]verwhelming evidence of [the defendant's] guilt was not presented." *Id.*

Defendant argues for the same result in the present case. As we have previously stated, " '[t]his Court has rarely held the use of photographic evidence to be unfairly prejudicial, and the case presently before us

is distinguishable from the few cases in which we have so held.' " *State v. Bare*, 194 N.C. App. 359, 364, 669 S.E.2d 882, 886 (2008) (quoting *State v. Robinson*, 327 N.C. 346, 357, 395 S.E.2d 402, 409 (1990)).

Applying the law as provided in *Hennis*, we hold the trial court did not abuse its discretion in admitting the photographs in the present case where all the photographs were introduced to illustrate witness testimony concerning either the crime scene as it existed immediately following the shootings, each victim's location in the nursing home, or the specific injuries sustained by the victims. Moreover, we do not find the number of photographs or manner of presentation extraordinary given the number of victims and the size of the enlarged photographs.[3] Lastly, we find it pertinent that the jury was properly instructed to consider the photographs solely for illustrative purposes. As a result, we cannot say that the trial court's decision to admit the photographs was so arbitrary that it could not have been the result of a reasoned decision.

Nevertheless, assuming arguendo the trial court abused its discretion in admitting the photographs, the error was harmless considering the overwhelming evidence of defendant's guilt.

## Motion to Dismiss

[3] In defendant's final issue on appeal, defendant contends the trial court erred in denying his motion to dismiss the charge of assault with a deadly weapon with intent to kill Officer Garner.[4] As a result of the purported error, defendant contends the case must be remanded for a new trial.

"This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence

---

3. The largest photograph attached to an SBI diagram was a fourteen and a half by nineteen inch photograph.

4. Defendant was originally indicted for assault of Officer Garner with a deadly weapon with intent to kill inflicting serious injury. However, considering the nature of Officer Garner's injury, the trial court only allowed the jury to consider the lesser offense of assault with a deadly weapon with intent to kill.

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

> Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, *taken singly or in combination*, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

*Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (citation and quotation marks omitted).

"[T]he elements of assault with a deadly weapon with intent to kill are: '(1) an assault; (2) with a deadly weapon; (3) with the intent to kill[.]' " *State v. Garris*, 191 N.C. App. 276, 287, 663 S.E.2d 340, 349 (2008) (quoting *State v. Coria*, 131 N.C. App. 449, 456, 508 S.E.2d 1, 5 (1998)); *see also* N.C. Gen. Stat. § 14–32(c) (2011).

On appeal, defendant only challenges the sufficiency of the evidence with respect to the third element of the offense, intent to kill. Specifically, defendant contends the evidence shows he never intended to kill Officer Garner, but instead intended for Officer Garner to kill him. In support of his contention, defendant points to evidence tending to show he was depressed and felt his end was near, the deceased were all shot in their abdominal areas whereas Officer Garner was shot in the leg by three shotgun pellets on a ricochet, he made no attempt to use either of the two handguns on his person after he was shot by Officer Garner, and he told numerous officers to "shoot him" or "kill him." Moreover, defendant emphasizes he never expressed intent to kill Officer Garner.

Despite consideration of the evidence pointed to by defendant, we hold that, upon consideration of all the evidence in the light most favorable to the State, there is sufficient evidence of "intent to kill" to support

the charge of assault with a deadly weapon with intent to kill Officer Garner. As our Supreme Court stated long ago,

> [a]n intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred. An intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances.

*State v. Cauley*, 244 N.C. 701, 708, 94 S.E.2d 915, 921 (1956) (citation and quotation marks omitted).

In this case, the evidence tended to show that defendant had already fatally shot eight people with the shotgun at the time Officer Garner confronted defendant in the hallway. Defendant then ignored Officer Garner's repeated instructions to drop the shotgun and continued to reload it. Defendant then turned toward Officer Garner, lowered the shotgun, and fired one shot at Officer Garner at approximately the same time that Officer Garner fired at defendant and ducked into a doorway. Although Officer Garner was only struck in the leg by shotgun pellets on a ricochet, considering the relevant circumstances and viewing all the evidence in the light most favorable to the State, we find sufficient circumstantial evidence to support a reasonable inference of intent to kill. Therefore, the trial court did not err in denying defendant's motion to dismiss the assault with a deadly weapon with intent to kill charge.

### III. Conclusion

Based on the forgoing reasons, we find neither plain nor prejudicial error in the trial court's admission of evidence below and hold defendant received a fair trial. Moreover, we find sufficient evidence to support the charge of assault with a deadly weapon with intent to kill and hold the trial court did not err in denying defendant's motion to dismiss.

No error.

Judges HUNTER (Robert C.) and GEER concur.