STATE OF NORTH CAROLINA v. TAUREAN WHITE, Defendant

No. COA98-1315

(Filed 19 October 1999)

## Evidence— prior bad act—first-degree rape—sexual assault— not sufficiently similar—only shows propensity

The trial court erred in a first-degree rape and non-felonious breaking or entering case by allowing evidence under Rule 404(b) of an alleged prior sexual assault because the facts of the two incidents are not sufficiently similar and the evidence only shows the propensity of defendant to commit sexual acts against young female children.

Appeal by defendant from judgments entered 18 December 1997 by Judge J. B. Allen, Jr., in Wake County Superior Court. Heard in the Court of Appeals 9 September 1999.

In May 1997, thirteen-year-old Taurean White (defendant) lived with his parents at 4101 Willow Oak Road in Raleigh, North Carolina. Nine-year-old Rema Sider lived with her sixteen-year-old brother

Mikey and their mother two houses down the street from defendant. From 1993 to 1997, Mikey and defendant were friends and often visited each other in their respective family homes.

On 12 May 1997 Rema arrived home from school around 3:55 p.m. None of her family was home when she arrived. Rema went upstairs to get a drink of water, and on her way back downstairs, defendant "popped out" in front of her with a knife in his hand. Rema thought defendant was playing around, and she told him to leave. Defendant refused and forced her to pull her pants down. Defendant then "put his penis in [her] hole." Defendant had the knife in his hand during the entire incident. At one point, she tried to run away, but defendant stopped her. When defendant left, he told Rema not to open the door for anybody or tell anybody what happened. Defendant returned and heard Rema talking to her mother over the telephone; he told Rema to tell her mother that he came over "to borrow some CD's," and threatened to kill her if she told anyone about what just happened.

Ms. Sider was preparing to leave to pick up Rema, when Rema called her on the telephone. Rema was crying and told Ms. Sider what had happened. Rema also told her that defendant had taken some cigarettes from their house that day. Ms. Sider called 911 before going home. When she arrived at her home, a neighbor, who was a deputy sheriff, was at the house comforting Rema, who was upset and crying. At that time Rema again told Ms. Sider what defendant had done.

At trial on direct examination, Ms. Sider made statements of her personal belief in the truth of Rema's story. The court sustained defense counsel's objection to the first statement ("[Rema has] never really lied about this like this[]"), but defense counsel did not object to the other two statements: "I mean, this is nothing. I know when the child lie[s]. I raise[d] two boys and I know"; "I mean, this is nothing simple she can lie. And I know I believe her this is the truth."

Dr. Susan Lazurik, a graduate of UNC Medical School, who works for UNC Hospitals in medicine and pediatrics, testified that she examined Rema on 12 May 1997; that Rema denied any vaginal penetration; that her examination revealed no medical evidence of penetration; and that she found Rema to be a credible person.

Defendant testified on his own behalf. He maintained he never left his house on 12 May 1997. Defendant admitted he had been suspended from school because a teacher said defendant assaulted him, but he denied committing an assault. Defendant denied the testimony

STATE v. WHITE

[135 N.C. App. 349 (1999)]

of Rema, Ms. Sider, and other witnesses who claim he sexually assaulted Rema in May of 1997. On cross-examination, defendant also denied touching any part of his body to the four-year-old foster child staying with Betty Sorto, his father's aunt, in Wake Forest during September of 1997.

In rebuttal, the State presented the following evidence pursuant to Rule 404(b) of the North Carolina Rules of Evidence: Betty Sue Sorto lives in Wake Forest. Defendant's father is her nephew. In September 1997, following the alleged incident with Rema Sider, defendant and his father were living in Ms. Sorto's camper, close to her house, on the weekends. On the night of 28 September 1997, defendant came to her house to watch television. About 10:00 p.m., Ms. Sorto put her foster child Dominique to bed and closed her bedroom door. About 10:45 p.m., defendant asked for permission to go to the bathroom; he was gone about 20-25 minutes. Ms. Sorto asked defendant if Dominique had been sleeping and defendant replied that she had not. The next morning Ms. Sorto asked Dominique what defendant was doing in her room and Dominique said, "he was licking my pee pee." Dominique testified that defendant came into her room and "licked [her] private."

Defendant was convicted of first-degree rape and non-felonious breaking or entering. An active sentence of not less than 192 months nor more than 240 months on the charge of first-degree rape was imposed on the fourteen-year-old defendant. The trial court continued judgment on the charge of non-felonious breaking or entering. Defendant appealed to this Court, assigning error.

*Attorney General Michael F. Easley, by Assistant Attorney General Teresa L. Harris, for the State.*

*Cheshire, Parker, Schneider, Wells & Bryan, by Joseph B. Cheshire, V, and Bradley J. Bannon, for defendant appellant.*

HORTON, Judge.

Defendant argues that the allegation of sexual assault against Dominique was not admissible under Rule 404(b) of the North Carolina Rules of Evidence. The Rule provides, in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, prepara-

tion, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (1992 and Cum. Supp. 1998). If the proffered evidence is admissible under Rule 404(b), the trial court must then consider whether the probative value of the evidence outweighs its prejudicial effects. Our Supreme Court has held that "the ultimate test for determining whether such evidence is admissible is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403." *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988). For proper admission of those acts which have not resulted in a criminal conviction, the law requires the State to produce "substantial evidence tending to support a reasonable finding *by the jury* that the defendant committed a similar act or crime and its probative value is not limited *solely* to tending to establish the defendant's propensity to commit a crime such as the crime charged." *State v. Stager*, 329 N.C. 278, 303-04, 406 S.E.2d 876, 890 (1991).

Here, the proximity in time of the two incidents is not in issue. Defendant contends, however, that the 12 May 1997 incident involving Rema and the 28 September 1997 incident involving Dominique were not sufficiently similar to allow admission of the 28 September 1997 incident under Rule 404(b). With regard to the similarity of the two incidents, the trial court found that

in comparing the evidence concerning the alleged rape on May 12, 1997 and the alleged incident at Ms. Sorto's house on September 28th, 1997 finds that they are similar in nature; that it involves this defendant and it involves a nine-year[-]old young female on May 12th, 1997, and a four-year[-]old young female on September 28th, 1997; that both of these alleged instances occurred in the victim's home. The victim home of Rema Sider and the victim home, the child Dominique's home, foster home, with Ms. Sorto; that the incident on September 28th occurred just little over four months from the incident which occurred on May 12, 1997; that in both cases, the victims were young, helpless female children one age 9 and one age 4.

That the evidence tends to show, what it does show is for jury to say and determine that both instances involve immoral and unlawful sexual conduct by the defendant with two minor females, young females.

The court does find as a fact that this evidence is clearly admissible under 404B to show proof of motive to commit a sexual offense, the opportunity to take advantage of a minor child and to commit an offense, the intent—the intent of the defendant to form this sexual conduct act with the nine-year[-]old on May—May and the four-year[-]old in September, to perform—and for these reasons the court finds that this evidence should be admissible under 404B.

The court does further find that this is evidence that's admissible on behalf of the state to challenge the credibility of the defendant who voluntarily testified and then denied any wrongful acts and denied any of the wrongful acts that occurred on September 28, 1997 as well as May 12, 1997.

. . . And the court has weighed this evidence under Rule 403 and finds that the probative value is not substantially outweighed by the danger of unfair prejudice.

We agree with defendant that the facts of the two incidents are not sufficiently similar to allow the admission of the incident involving Dominique. Except for the fact that both incidents involve young females who were allegedly assaulted in their own homes, there are few points of similarity. In the case involving Rema Sider, defendant is accused of breaking into her home during the daytime at a time when she was alone; and having forcible vaginal intercourse with her by means of a weapon, threats, and his superior physical strength. There was also evidence that the sexual act included penetration; the victim, Rema Sider, who was nine years old at the time, was upset and crying hysterically in the aftermath of the incident. In the later incident involving Dominique, the act allegedly occurred at night, at a time the four-year-old child's caretaker was present in the home; defendant was in the child's home by permission, watching television; there was no evidence of the use of a deadly weapon or threats to Dominique; the sexual act alleged was cunnilingus; the child did not mention the act after it occurred, and was apparently laughing and happy when her caretaker saw her after the alleged incident. Our Supreme Court has defined "similar" to mean " ' "some unusual facts present in both crimes or particularly similar acts which would indicate the same person committed both." ' " *Stager*, 329 N.C. at 304, 406 S.E.2d at 890-91. Here, we cannot say that there are unusual features of the two incidents which point to defendant's identity as the perpetrator and allow the admission of the second incident in evidence

pursuant to Rule 404(b). "When the features of the . . . act [offered under Rule 404(b)] are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value." *State v. Artis*, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *judgment vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). In the case before us, the admission of the evidence relating to Dominique tends only to show the propensity of the defendant to commit sexual acts against young female children, a purpose for which the evidence cannot be admitted. The prejudicial effect of the evidence is obvious; our Supreme Court has explained that

> [p]roof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner is guilty, and thus effectually to strip him of the presumption of innocence.

*State v. Jones*, 322 N.C. 585, 589, 369 S.E.2d 822, 824 (1988). The evidence relating to Dominique was improperly admitted under Rule 404(b), and its admission requires that defendant be granted a new trial. Since the other errors alleged by defendant are not likely to recur, we need not address them.

New trial.

Judges GREENE and TIMMONS-GOODSON concur.