CALABRIA, Judge.
*203 Crystal Mangum ("defendant") appeals from judgment entered upon a jury verdict finding her guilty of second degree murder. We find no error.
*558 I. Background
Defendant and Reginald Daye ("Daye") met through mutual friends in January 2011. One month later, the two began living together along with defendant's three children. On 3 April 2011, defendant and Daye went to a party around 11:00 p.m. and returned to the apartment complex where they lived ("the apartment") approximately an hour and a half later. Durham Police Department ("DPD") Officer Curtis Knight ("Knight") was waiting for an illegally-parked vehicle to be towed from the apartment complex when defendant and Daye approached Knight's patrol car and asked what he was doing. Knight told them. Daye and defendant then entered the apartment, but a few minutes later they were back outside. Knight heard Daye yelling, "give me my money" at defendant, referring to $700 he had given defendant to hold for rent. After Knight told them that they could not be outside making so much noise, defendant and Daye went back inside the apartment.
Daye's nephew, Carlos Wilson ("Wilson"), who lived in the same apartment complex, also heard the commotion and went outside where he encountered Knight. Wilson told Knight he would check on Daye; however, no one answered when Wilson knocked on defendant and Daye's apartment door. Wilson left and went to bed, but was awakened by a knock on his door at approximately 3:00 a.m. When he opened the door, Wilson found Daye standing there, shirtless, and bleeding from his left side. Daye told Wilson that defendant had stabbed him. Wilson then called 911 and attempted to provide medical aide until the paramedics arrived.
At approximately 3:20 a.m., DPD Officer Bradley Frey ("Frey") arrived at the apartment. Daye told Frey that he and defendant argued about money, the argument became hostile, and defendant stabbed Daye with a knife. As a result of a stab wound to the left side of his chest, approximately two to three inches deep, Daye sustained extensive injuries requiring emergency surgery. Daye died a few days later due to complications from the stab wound.
Several DPD officers investigated and found broken glass, multiple knives-both broken and intact-and bloodstains throughout the apartment. A serrated knife, five inches long with Daye's blood on the blade, was laying flat on the living room couch. Daye's blood was also found *204 on the kitchen counter, the hallway carpet, and the ground and staircase railing outside the apartment. The door from the hallway to the bathroom had been broken off its hinges, and a clump of hair was found on the bathroom floor. Another clump of hair was found in the master bedroom.
DPD Officer C.N. Walker ("Officer Walker") was also dispatched to the apartment and, upon his arrival, he learned where defendant was located. Shortly thereafter, DPD Officer Charles Franklin and Officer Walker arrested defendant at the nearby home of Liddie Howard ("Howard"), a friend who was watching defendant's children at the time. When Officer Walker arrived at Howard's home, he did not observe any obvious injuries on defendant; but after arriving at police headquarters, defendant claimed "to hurt all over." Defendant had a scratch below her left eye, which was partially scabbed, and a lesion on the side of her lip.
On 18 April 2011, defendant was indicted for the first degree murder of Daye. From December 2011 to November 2013, defendant filed numerous pre-trial motions which included, inter alia, a motion in limine requesting that the trial court prohibit "the State from mentioning or eliciting from any witness any alleged acts of [defendant's] prior misconduct ... or any reference to defendant's past criminal conviction[s]." At the pre-trial motion hearing, the State informed the court that it intended to offer evidence pursuant to Rule 404(b) of the North Carolina Rules of Evidence regarding an altercation that occurred between defendant and a man named Milton Walker ("Walker") in February 2010 ("the Walker incident"). Walker had known defendant since high school, and the two dated periodically before they began living together in a duplex ("the duplex") in early 2010. Defendant's trial counsel expressed concern about the Rule 404(b) evidence, and stated that, "at a minimum," the issue should be addressed at the appropriate time during trial. The trial *559 court agreed, and asked that the prosecutor alert both the court and defendant prior to the introduction of any evidence sought to be admitted pursuant to Rule 404(b).
Defendant's trial proceeded in Durham County Superior Court on 12 November 2013 for the first degree murder charge and two charges of larceny of a chose in action. During trial, the State addressed the Rule 404(b) issue regarding the Walker incident to the trial court prior to calling any 404(b) witnesses. The trial court held a voir dire hearing on the evidence, during which the State summarized the facts of the Walker incident and sought to introduce the evidence pursuant to Rule 404(b) for the purposes of showing motive, opportunity, intent, absence of mistake or accident, plan, knowledge, and preparation. Defendant objected, but the trial court ultimately determined that a majority of the *205 Rule 404(b) evidence was admissible and probative of motive, intent, and plan. As a result, multiple witnesses, including Walker, were permitted to testify regarding defendant's involvement in the Walker incident.
The State also presented evidence from DPD Lieutenant Marianne Bond ("Bond"). Prior to his death, Daye spoke with Bond twice regarding the events that transpired between himself and defendant. Bond testified to Daye's statement of the events. After returning from the party, Daye and defendant argued in the apartment's parking lot until a DPD officer approached and told them to calm down. Inside the apartment, defendant called a male-whom Daye believed to be a police officer-to come pick her up and stated that she had a date. Defendant and Daye argued about defendant bringing other men to the apartment. Daye also demanded that defendant return his $700. After more arguing, defendant entered the bathroom and locked the door. Believing defendant had called an unidentified police officer to pick her up, Daye kicked in the bathroom door, grabbed defendant by the hair, and pulled her into the master bedroom. At some point, defendant retrieved multiple knives from the kitchen and "came at him three or four times." As Daye attempted to protect himself, he received a cut on his hand. Daye was heading to the front door trying to leave the apartment when defendant stabbed him in the hallway.
Daye also told Bond that he grabbed defendant during their argument, but he did not recall punching her that night, and insisted that he had never punched her. However, defendant hit Daye four to five times, including once in the eye. Daye denied ever holding or throwing any knives during the altercation. In response to Bond's question regarding multiple hair samples found in the apartment during the investigation, Daye admitted that he was probably the one that pulled out defendant's hair.
Defendant testified in her own defense, and gave a much different account. According to defendant, Daye had never before complained about defendant bringing other men to the apartment. However, on the night in question, Daye felt disrespected because defendant was talking to other men. During their argument, Daye suddenly hit defendant, causing her to fall down on the living room floor. The fighting spilled over to the master bedroom. At some point, Daye went to the kitchen, retrieved several knives, and began throwing them at defendant as she hid behind a mattress. After defendant locked herself in the bathroom, Daye kicked in the door and dragged her by the hair back to the master bedroom, where Daye pinned defendant against the floor, hitting and choking her. In response, defendant grabbed a knife off the floor, "poked" Daye in his side, exited the apartment, and ran to Howard's home.
*206 On 22 November 2013, the jury returned a verdict finding defendant guilty of second degree murder and not guilty on the larceny charges. The trial court entered judgment and sentenced defendant to a minimum term of 170 months and a maximum term of 216 months to be served in the custody of the North Carolina Division of Adult Correction. Defendant appeals.
II. Analysis
Defendant contends that the trial court committed reversible error by admitting evidence concerning the Walker incident pursuant to Rule 404(b). We disagree.
*560 The challenged evidence showed the following: on 17 February 2010, defendant and Walker argued all day, and that evening, defendant told Walker she wanted to end their relationship. Defendant also told Walker she had someone coming over to the duplex the next day. Later, defendant told Walker she was going to take a picture of his penis and put it on the Internet. Defendant began tugging at Walker's pants. When Walker pushed defendant away, she began swinging her arms at him, prompting Walker to grab defendant's neck and restrain her until he thought she had calmed down. When defendant was released, she grabbed a chair and began hitting Walker with it. After Walker grabbed the chair and tossed it aside, defendant grabbed a step stool and began jabbing Walker until he gained control of the stool and threw it to the side. At that time, defendant told Walker she had "something better" and ran to the kitchen. When Walker heard the sound of silverware clinking, he ran out of the duplex and hid across the street.
DPD Officer Hillary Thompson ("Thompson") arrived at the duplex in response to a domestic violence call. Walker was not present when Thompson arrived, but his car was still parked in front of the duplex. DPD Corporal John Tyler ("Tyler") also responded to the call, and noticed that all four tires on Walker's vehicle had been slashed and the windshield was completely smashed. Defendant told both Thompson and Tyler that she did not need any assistance from law enforcement and refused to tell them anything about the events that resulted in the domestic violence call.
When Walker noticed the police presence, he returned to the duplex and was greeted outside by Tyler. Once defendant, Walker, Tyler, and Thompson were all inside the duplex, Walker began to describe the events to Tyler. At this time, Thompson was positioned in the hallway, and defendant was in the back of the duplex. As Walker was describing the events to Tyler, defendant ran from the back of the duplex, jumped *207 over Thompson's back, and said to Walker, " I'm going to stab you, mother fu* * * *." Walker testified that defendant had a knife in her hand, but Thompson and Tyler both stated they did not see a knife.
Domestic Violence Investigator Leslie Bond ("Investigator Bond") later interviewed Walker and defendant separately. Investigator Bond observed Walker had scratches on his neck, back, and arms. She saw no visible injuries to defendant. During the interview, defendant was not initially forthcoming about damaging Walker's vehicle or threatening him, but eventually admitted that she damaged Walker's vehicle and told Walker that she would stab him if he came back into her house. Defendant also said that Walker had grabbed her around the neck and hit her, which caused her to scratch his arms.
In the instant case, defendant makes two related arguments. First, defendant argues that the prior acts detailed in the Walker incident testimony are not sufficiently similar to the altercation with Daye that led to the murder charge against her. According to defendant, the "two events were starkly different in their details and in their core nature." Second, defendant argues that the prior acts described by Walker and the State's other Rule 404(b) witnesses are too remote in time to be considered relevant.
"When the trial court has made findings of fact and conclusions of law to support its [ Rule] 404(b) ruling, as it did here, we look to whether the evidence supports the findings and whether the findings support the conclusions." State v. Beckelheimer, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). Our appellate courts "review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." Id. (italics added). Pursuant to Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen.Stat. § 8C-1, Rule 404(b) (2013). But such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." Id.
*561 "Even if evidence is admissible according to Rule 404(b), it must also be scrutinized under Rule 403, which provides for the exclusion of otherwise admissible evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " State v. Lanier, 165 N.C.App. 337, 344, 598 S.E.2d 596, 601 (2004) (quoting N.C. Gen.Stat. § 8C-1, Rule 403 ). "In each case, 'the burden is on the defendant to *208 show that there was no proper purpose for which the evidence could be admitted.' " State v. Williams, 156 N.C.App. 661, 664, 577 S.E.2d 143, 145 (2003) (quoting State v. Willis, 136 N.C.App. 820, 823, 526 S.E.2d 191, 193 (2000) ). "The determination of whether relevant evidence should be excluded under Rule 403 is a matter that is left in the sound discretion of the trial court, and the trial court can be reversed only upon a showing of abuse of discretion." State v. Hipps, 348 N.C. 377, 405-06, 501 S.E.2d 625, 642 (1998).
Here, the trial court properly conducted a voir dire hearing to determine whether evidence of the Walker incident was of the type that is made admissible under Rule 404(b) and was relevant for a purpose other than propensity. See State v. Morgan, 315 N.C. 626, 637, 340 S.E.2d 84, 91 (1986) (the trial judge must determine whether extrinsic conduct evidence is offered pursuant to Rule 404(b), is of a proper type, and is relevant for some purpose other than to show the defendant's "propensity for the type of conduct for which he is being tried"). Next, the court found that the events at issue, which occurred fourteen months apart, were temporally proximate. The court then found that the Walker incident and Daye's death were "substantially similar." Both incidents involved: (1) defendant and a male individual with whom she was romantically involved; (2) the "escalation of an argument that ended in the use of force between the participants"; (3) restraint of defendant by her male counterpart and defendant's subsequent release from that restraint; (4) the "escalation of violence and repeated restraint"; and (5) "statements made [by defendant] ... regarding the use of a knife or stabbing." The court also found defendant's alleged attempt to assault Walker with a knife and the fact that Walker heard the clattering of silverware were substantially similar to this case.
As a result of these findings, the trial court ruled that evidence regarding certain portions of the Walker incident was both admissible and "particularly [probative] of motive, intent, and plan." However, certain portions of the Walker incident-specifically, the facts that clothing was set on fire and children were present in the apartment-were ruled inadmissible under Rules 403 and 404(b). The trial court then conducted the Rule 403 balancing test and concluded that the probative value of the admissible Walker incident evidence was not substantially outweighed by any unfair prejudice to defendant.
As explained in State v. Coffey, Rule 404(b) is
a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to *209 but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.
326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).
Thus, even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also "is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried."
State v. Bagley, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987) (citation omitted). For such evidence to be deemed relevant, it must have the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen.Stat. § 8C-1, Rule 401 (2013).
Despite the inclusive nature of Rule 404(b), it is still "constrained by the *562 requirements of similarity and temporal proximity." State v. Al-Bayyinah, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002) (citations omitted). In other words, "the ultimate test of admissibility is whether the incidents are sufficiently similar to those in the case at bar and not so remote in time as to be more prejudicial than probative under ... Rule 403 [.]" State v. Love, 152 N.C.App. 608, 612, 568 S.E.2d 320, 323 (2002). Prior acts or crimes are sufficiently similar to the crime charged "if there are some unusual facts present in both" incidents, State v. Stager, 329 N.C. 278, 304, 406 S.E.2d 876, 890 (1991) (citations omitted) (internal quotations omitted), that "go to a purpose other than propensity [.]" Beckelheimer, 366 N.C. at 132, 726 S.E.2d at 160. The similarities between the two situations need not "rise to the level of the unique and bizarre." State v. Green, 321 N.C. 594, 604, 365 S.E.2d 587, 593 (1988). Remoteness in time, "for purposes of [ Rule] 404(b) [,] must be considered in light of the specific facts of each case and the purposes for which the evidence is being offered." Hipps, 348 N.C. at 405, 501 S.E.2d at 642.
To support her claim that the prior acts described in the Walker incident testimony were not sufficiently similar for purposes of Rule 404(b), defendant relies on four sexual assault cases: State v. Moore, 309 N.C. 102, 305 S.E.2d 542 (1983) ; State v. White, 135 N.C.App. 349, 520 S.E.2d 70 (1999) ; State v. Webb, 197 N.C.App. 619, 682 S.E.2d 393 (2009) ; State v. Gray, 210 N.C.App. 493, 709 S.E.2d 477 (2011). Arguing *210 by analogy, defendant states that although "courts in this State are most liberal in allowing prior [acts of] the defendant to be admitted in" sexual assault cases, "evidence of prior sexual misconduct [was] excluded as insufficiently similar to the charged offense in [Moore, White, Webb , and Gray. ]" However, these cases are inapplicable to the situation we confront here.
To begin, the dispositive issue in Moore, White, Webb , and Gray was whether the similarities between the prior acts or crimes and the crimes charged were sufficient to provide a reasonable inference that the same person committed both. Moore, 309 N.C. at 106-08, 305 S.E.2d at 544-46 ; White, 135 N.C.App. at 353-54, 520 S.E.2d at 73-74 ; Webb, 197 N.C.App. at 623, 682 S.E.2d at 395-96 ; Gray, 210 N.C.App. at 512-13, 709 S.E.2d at 490-91. Here, there is no question that defendant was involved in both the Walker incident and the altercation that led to Daye's stabbing and eventual death. Furthermore, the analysis in Moore, White, Webb , and Gray hinged on each respective Court's decision that the differences in the incidents at issue were more significant than the similarities. For example, in White, this Court granted the defendant-who had been charged with first degree rape and non-felonious breaking or entering-a new trial because he was prejudiced when the trial court allowed the State to introduce Rule 404(b) evidence of his subsequent act of sexual misconduct that was not sufficiently similar to the crime charged. 135 N.C.App. at 353-54, 520 S.E.2d at 73. Although both incidents involved young female victims who were allegedly assaulted by the defendant in their own homes, these similarities were substantially outweighed by the differences between the crime charged and the Rule 404(b) evidence: the assaults occurred under different circumstances and at different times of day; one assault was perpetrated with the use of threats and a weapon while the other was not; and the victims reacted in very different ways. Id. at 353, 520 S.E.2d at 73. As a result, the Rule 404(b) evidence "tend[ed] only to show the propensity of the defendant to commit sexual acts against young female children, a purpose for which the evidence cannot be admitted." Id. at 354, 520 S.E.2d at 74.
In contrast to Moore, White, Webb , and Gray, we find strong similarities between the crime charged and the Walker incident described by the State's Rule 404(b) witnesses, especially in terms of the relationship between the parties involved, defendant's escalation of the violence in response to being restrained, and the general nature of both incidents. Specifically, as the trial court found, both incidents involved defendant and her current boyfriend, escalation of an argument that led to the use of force between the participants; defendant's further escalation *211 of the argument; and defendant's deliberate decision to obtain a knife from the kitchen. *563 Given these similarities, the Walker evidence was probative of defendant's motive, intent, and plan in the instant case. The Rule 404(b) evidence helped establish defendant's motive in stabbing Daye "as it ... show [ed] how defendant acted after" the break-up and "what [s]he was motivated to do in attempting to effect a satisfactory resolution." State v. Parker, 113 N.C.App. 216, 224, 438 S.E.2d 745, 750 (1994). Indeed, this Court has explicitly noted that "[e]vidence of prior behavior following a rejection in a romantic relationship is admissible to prove motive[.]" State v. Aldridge, 139 N.C.App. 706, 714, 534 S.E.2d 629, 635 (2000) (citing Parker, 113 N.C.App. at 224, 438 S.E.2d at 750-51 ). Parker and Aldridge establish the general principle that prior instances demonstrating a defendant's violent response to the deterioration of a relationship are relevant for purposes other than propensity. This principle is especially applicable here, where defendant acted belligerently and violently toward Walker after their relationship collapsed. Moreover, the Walker incident was probative of defendant's intent to stab Daye because, in order to impose her will, defendant deliberately retrieved a knife for the announced purpose of committing a stabbing. Finally, because the features of both incidents were substantially similar, the Rule 404(b) evidence was admissible to show the existence of defendant's plan to stab Daye after becoming enraged during the course of their altercation. See State v. Barfield, 298 N.C. 306, 329, 259 S.E.2d 510, 529-30 (1979) ( "Evidence of other offenses is admissible if it tends to show the existence of a plan or design to commit the offense charged, or to accomplish a goal of which the offense charged is a part or toward which it is a step." Essentially, "a concurrence of common features" must be present in both instances.), abrogated in part on other grounds by State v. Johnson, 317 N.C. 193, 344 S.E.2d 775 (1986). Consequently, the State's evidence supports the trial court's findings, and the findings support the court's conclusion on the similarity requirement.
On the issue of temporal proximity, defendant argues that the Walker incident, as detailed in the challenged testimony, was too remote in time to be admissible under Rule 404(b), especially for the purpose of proving that defendant "had in her mind a ... plan to engage in assaults with a knife."
"[R]emoteness in time generally affects only the weight to be given [ Rule 404(b) ] evidence, not its admissibility." State v. Parker, 354 N.C. 268, 287, 553 S.E.2d 885, 899 (2001) (citations omitted) (internal quotation marks omitted). Although "[r]emoteness in time between an uncharged *212 crime and a charged crime is more significant when the evidence of the prior crime is introduced to show that both crimes arose out of a common scheme or plan [,]" it "is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident[.]" Stager, 329 N.C. at 307, 406 S.E.2d at 893.
In support of her contention that the Walker evidence was too remote in time to be relevant to the murder charge in this case, defendant cites State v. Shane, 304 N.C. 643, 655-56, 285 S.E.2d 813, 820-21 (1982) (holding that a seven-month gap between events that occurred at different places and involved different women was too remote and negated the plausibility of an ongoing and continuous plan) and State v. Jones, 322 N.C. 585, 590-91, 369 S.E.2d 822, 825 (1988) (holding that a seven-year gap between prior acts and the offenses charged rendered 404(b) evidence inadmissible). However, we need not discuss Shane and Jones in depth.
In Shane, our Supreme Court based its holding on significant dissimilarities between the prior act and the offense charged, concluding that the passage of time was sufficient to preclude the evidence at issue. 304 N.C. at 655-56, 285 S.E.2d at 820-21. As for Jones, the Court simply decided that, given the facts of the case, a seven-year differential "raise[d] serious concerns about the probative nature of [the Rule 404(b) ] evidence." 322 N.C. at 589, 369 S.E.2d at 824. In the instant case, we have already held that the similarities between defendant's prior act and the offense charged were substantial. "[T]he more striking the similarities between the facts of the crime charged and the facts of the prior bad act, the longer evidence of the prior bad act remains relevant and potentially *564 admissible for certain purposes." Gray, 210 N.C.App. at 507, 709 S.E.2d at 488. Furthermore, as noted above, "[r]emoteness for purposes of 404(b) must be considered in light of the specific facts of each case[.]" Hipps, 348 N.C. at 405, 501 S.E.2d at 642. On these facts, a fourteen-month gap between the incidents is not too remote. Significantly, our Supreme Court has repeatedly upheld the admission of Rule 404(b) evidence in cases where a significant lapse of years between incidents existed. See, e.g., Stager, 329 N.C. at 307, 406 S.E.2d at 893 (holding that, where Rule 404(b) evidence was offered for purposes of intent, motive, plan, preparation, and absence of accident, "the death of the defendant's first husband ten years before the death of her second was not so remote as to have lost its probative value"); State v. Carter, 338 N.C. 569, 588-89, 451 S.E.2d 157, 167-68 (1994) (affirming admissibility of Rule 404(b) evidence of prior assault despite eight-year lapse between assaults); State v. Frazier, 344 N.C. 611, 615, 476 S.E.2d 297, 300 (1996) (concluding that *213 incidents as remote as twenty-seven years earlier were not too remote in time to prove a common scheme or plan); State v. Penland, 343 N.C. 634, 654, 472 S.E.2d 734, 745 (1996) (holding that a ten-year gap between instances of distinct and bizarre sexual misbehavior did not render them so remote as to make the evidence irrelevant or negate the existence of a common scheme or plan). Given the substantial similarities between the Walker incident and Daye's stabbing, the fourteen-month gap between the events "was not so significant as to render [defendant's] prior acts irrelevant ..., and thus, temporal proximity of the acts was a question of evidentiary weight to be determined by the jury." Beckelheimer, 366 N.C. at 133, 726 S.E.2d at 160. Accordingly, the trial court did not err in ruling that the majority of the State's 404(b) evidence was relevant and admissible to show defendant's plan, intent, and motive to stab Daye.
Having determined that the Rule 404(b) evidence was sufficiently similar and not too remote in time, we now review the trial court's 403 ruling for abuse of discretion. As this Court has recognized, "[e]vidence is not excluded under [ Rule 403 ] simply because it is probative of the offering party's case and is prejudicial to the opposing party's case. Rather, the evidence must be unfairly prejudicial." State v. Gabriel, 207 N.C.App. 440, 452, 700 S.E.2d 127, 134 (2010) (citations omitted). "This determination is within the sound discretion of the trial court, and the trial court's ruling should not be overturned on appeal unless the ruling was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision." State v. Hyde, 352 N.C. 37, 55, 530 S.E.2d 281, 293 (2000) (citation omitted) (brackets and internal quotation marks omitted).
Here, "a review of the record reveals that the trial court was aware of the potential danger of unfair prejudice to defendant and was careful to give ... proper limiting instruction[s] to the jury." Hipps, 348 N.C. at 406, 501 S.E.2d at 642. Outside the presence of the jury, the trial court heard arguments from the attorneys regarding the Rule 404(b) evidence and ruled on its admissibility. The trial court also excluded portions of the Walker incident that did not share sufficient similarity to defendant's altercation with Daye. Significantly, the trial court gave numerous limiting instructions during the course of the Rule 404(b) testimony and one before its final charge to the jury. "The law presumes that the jury heeds limiting instructions that the trial [court] gives regarding the evidence." State v. Shields, 61 N.C.App. 462, 464, 300 S.E.2d 884, 886 (1983). Given the significant points of commonality between the Rule 404(b) evidence and the offense charged, and the trial court's conscientious handling of the process, the trial court's Rule 403 determination was not "manifestly *214 unsupported by reason or ... so arbitrary it could not have been the result of a reasoned decision." Hyde, 352 N.C. at 55, 530 S.E.2d at 293. Accordingly, we discern no abuse of discretion in the trial court's determination that the danger of unfair prejudice did not substantially outweigh the probative value of the Rule 404(b) evidence.
Nevertheless, defendant insists that the trial court's admission of the Rule 404(b) evidence constituted prejudicial error because the Walker incident "had no probative *565 value beyond serving as evidence of [defendant's] bad character as a person who would stab a boyfriend for no good or justifiable reason."
Even if we assumed that the trial court erred in admitting the challenged evidence, defendant would bear the burden of showing that the error was prejudicial. State v. LePage, 204 N.C.App. 37, 43, 693 S.E.2d 157, 162 (2010). "A defendant is prejudiced by the trial court's evidentiary error where there is a 'reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.' " State v. Miles, 222 N.C.App. 593, 607, 730 S.E.2d 816, 827 (2012) (quoting N.C. Gen.Stat. § 15A-1443(a) ). We find no reasonable possibility that, in the absence of the admission of the Rule 404(b) evidence, the jury would have reached a different result.
To begin, our review of the record reveals that there was substantial evidence that defendant acted with the requisite malice to support a second degree murder verdict, particularly the fact that she used a five-inch knife blade to stab and kill Daye. See State v. Robbins, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983) ("Second-degree murder is the unlawful killing of a human being with malice, but without premeditation and deliberation.... Malice may be ... found if there is an intentional taking of the life of another without just cause, excuse or justification.") (citations omitted); State v. Cox, 11 N.C.App. 377, 380, 181 S.E.2d 205, 207 (1971) (When used in an assault, "a knife with a three-inch blade constitutes a deadly weapon" as a matter of law); State v. Posey, --- N.C.App. ----, ----, 757 S.E.2d 369, 374 (2014) ("[T]he intentional use of a deadly weapon proximately causing death gives rise to the presumption that (1) the killing was unlawful, and (2) the killing was done with malice. ") (emphasis added) (citation omitted).
In addition, there was substantial evidence before the jury which belied defendant's claim of self-defense. For example, as the State points out, although defendant claimed she stabbed Daye in the master bedroom as he sat on top of her-hitting and choking her-Daye's *215 blood was not found in that location. Instead, his blood was found in the hallway, where Daye claimed that defendant stabbed him. Evidence that Daye suffered a black eye and defensive injuries during the altercation, while defendant suffered no significant injuries, certainly gave the jury reason to doubt defendant's testimony and accept Daye's version of events.
Finally, defendant's actions following the stabbing suggest that she had not killed in self-defense and indicate a desire to avoid responsibility and prosecution for her actions. After Daye left the apartment, stabbed and bleeding, defendant told a concerned neighbor that everything was fine. Instead of trying to render aid to Daye, defendant fled to Howard's apartment, where she called James Williams ("Williams"), a friend and detention officer. Despite being told by Williams to return to the apartment and call 911, defendant refused to comply with either command. Although defendant eventually dialed 911, she hung up and laid down on the floor. "Defendant's flight after [Daye's stabbing] is clear evidence from which the jury could reasonably infer that defendant knew that [s]he had not killed in self-defense, otherwise [s]he would have stayed and waited for the police to come, or [s]he would have called the police [her]self." State v. Kirby, 206 N.C.App. 446, 455, 697 S.E.2d 496, 502 (2010). Accordingly, there was sufficient evidence to establish the jury's verdict finding defendant guilty of second degree murder absent self-defense.
III. Conclusion
Because the Rule 404(b) evidence was sufficiently similar and temporally proximate to the crime charged, the trial court did not err in ruling that it was admissible. Nor did the trial court abuse its discretion in determining that the evidence's probative value was not substantially outweighed by the potential for unfair prejudice. Even if the trial court had erred in admitting the challenged evidence, the error would not have been prejudicial to defendant.
NO ERROR.
Chief Judge McGEE and Judge McCULLOUGH concur.